[S.F. No. 25086. May 31, 1988.]

RICHARD RYAN, a Judge of the Municipal Court, Petitioner, v. COMMISSION ON JUDICIAL PERFORMANCE, Respondent.

520

522

524

**COUNSEL**

Thomas J. Nolan, Kathleen C. Caverly and Nolan & Parnes for Petitioner.

John K. Van de Kamp, Attorney General, Raymond Brosterhous II and Eddie T. Keller, Deputy Attorneys General, for Respondent.

OPINION

THE COURT.—The Commission on Judicial Performance (hereafter the Commission) recommends that Municipal Court Judge Richard J. Ryan, of the Roseville-Rocklin Judicial District of Placer County, be removed for "wilful misconduct in office" (hereafter wilful misconduct) and "conduct prejudicial to the administration of justice that brings the judicial office into disrepute" (hereafter prejudicial conduct). (Cal. Const., art. VI, § 18, subd. (c).) Judge Ryan petitions this court for remand to the Commission, alleging that he was denied due process of law because (1) numerous witnesses in these disciplinary proceedings were admonished not to speak to the judge or anyone, and (2) the Commission limited Judge Ryan's oral argument time to 45 minutes rather than the 2 hours he had requested. Judge Ryan also petitions for review,[1] alleging that the Commission's findings of fact and conclusions of law are not supported by clear and convincing evidence.

After independently reviewing the record, we conclude that Judge Ryan has not been deprived of due process in this disciplinary proceeding. Moreover, we conclude that the Commission's recommendation of removal is supported by clear and convincing evidence.

I. *Background Information.*

Judge Ryan is 39 years of age and was born in San Mateo, California. He served in the Air Force from 1965 to 1968 and graduated from San Diego State University in 1971. The judge attended the University of San Diego Law School and graduated from that institution in 1974. He was admitted to the California State Bar soon after.

Judge Ryan moved to Auburn, where he worked in a law office for two years and then went into sole practice for another two years. In 1978 he was elected as a judge of the Justice Court for the Foresthill Judicial District. In 1982 he became municipal court judge in the Roseville-Rocklin Judicial District, Placer County, where he has served to the present time.

The Commission served Judge Ryan with notice of formal proceedings on January 14, 1986. Three special masters (the masters) were appointed to take testimony on this matter, and the Commission appointed examiners to present the case. After 13 days of hearings, the masters found that Judge

---

[1] Judge Ryan's petition states that it is made pursuant to rule 920(c) of the California Rules of Court. However, rule 920 applies only to Commission determinations for private admonishment. Rule 919, on the other hand, applies to review of Commission recommendations of censure or removal from office. It therefore appears that Judge Ryan intended to file a petition for review under rule 919(b), and we treat the petition as so filed.

Ryan had engaged in numerous acts of wilful misconduct and prejudicial conduct. The Commission then heard oral argument in the matter and determined that Judge Ryan committed three acts of wilful misconduct in office and seventeen acts of prejudicial conduct. The Commission dismissed 17 other charges as not proven. ■ In reviewing the Commission's findings and conclusions, we are concerned only with the charges that the Commission sustained. (*Wenger* v. *Commission on Judicial Performance* (1981) 29 Cal.3d 615, 622 [175 Cal.Rptr. 420, 630 P.2d 954]; *Spruance* v. *Commission on Judicial Qualifications* (1975) 13 Cal.3d 778, 784, fn. 5 [119 Cal.Rptr. 841, 532 P.2d 1209].) The Commission recommended removal by a vote of five to two. The two commissioners in the minority espoused censure.

II. *Petition for Remand Based on Alleged Due Process Violations.*

A. *Propriety of Admonishments.*

Judge Ryan contends that he was denied due process of law because the examiners improperly admonished the witnesses during the preliminary investigation that they were not to talk to anyone about the subject of the investigation. The judge claims that this admonishment prevented him from adequately preparing for his defense because certain witnesses refused to speak with him.

The pertinent facts may be summarized briefly and are not in dispute. From September through December of 1985, the Commission conducted a preliminary investigation into the judicial performance of Judge Ryan. The investigation consisted of sworn interviews with over 100 people. After each interview, the examiners informed the interviewees of the confidential nature of the investigation and told them not to speak to anyone about it. Moreover, in some of the interviews the examiners admonished the interviewees specifically not to speak to Judge Ryan. While the preliminary investigation was being conducted, Judge Ryan wrote several letters to the Commission, objecting to the admonishments given to the witnesses. The Commission responded that it was not aware of any improprieties.

After the notice of formal proceedings was served, the judge received discovery information from the examiners from January through March, including tapes of the investigative interviews and lists of prospective witnesses. During this time Judge Ryan did not retain counsel or avail himself

of applicable discovery procedures that would have allowed him to compel information from hesitant witnesses.[2]

On March 31, 1986, the first day of hearings before the masters, Judge Ryan made a motion to dismiss or exclude evidence based on the allegedly improper admonishments. The masters placed the burden on the judge to identify which persons had been improperly admonished and which persons refused to speak to the judge as a result of the improper admonishments. The judge offered evidence that he had tried to speak to four witnesses, but that they had refused to speak with him. He claims he stopped seeking information at that point because the admonishments rendered his discovery futile.

Although Judge Ryan never proved that the admonishments caused the witnesses to refuse to speak with him, the masters nevertheless directed the examiners to send letters to those individuals who had been admonished, informing those witnesses that they were free to speak to the judge if they wished. The examiners initially sent letters only to those persons who had been admonished not to speak to Judge Ryan personally. However, on April 8, 1986, while the hearing before the masters was still pending, the examiners sent another 66 letters to every prospective witness they intended to call in the proceeding, informing those people that they could speak to the judge if they wished. The hearing before the masters continued through April 21, 1986.

On the third day of the hearings, the examiners indicated that they would agree to a continuance so that Judge Ryan could interview any witnesses he wished. The judge rejected a continuance, stating that the examiners should have to "live with" their errors. The masters then indicated that they would grant the judge a continuance at any time so that he could interview any of the witnesses that he claimed were improperly admonished, but the judge chose to stand on the record as it existed. During the remainder of the hearing, the masters began the practice of informing each witness who took the stand that they could speak to Judge Ryan. The masters subsequently denied the judge's motion for dismissal or exclusion of evidence.

█ Article VI, section 18 of the California Constitution and rule 902(a) of the California Rules of Court require that preliminary investigations by the Commission be strictly confidential.[3] Such confidentiality protects a

---

[2] Rule 910 of the California Rules of Court gives the judge the right to subpoena witnesses. Moreover, Government Code section 68752 provides procedures to compel a witness to attend or testify, and section 68753 provides the authority for ordering depositions.

[3] Article VI, section 18, of the California Constitution provides for the suspension or removal of judges. Subdivision (f) of section 18 states: "The Judicial Council shall make rules

judge from premature public attention and also protects the witnesses from intimidation. (*McCartney* v. *Commission on Judicial Qualifications* (1974) 12 Cal.3d 512, 520-521 [116 Cal.Rptr. 260, 526 P.2d 268]; *Mosk* v. *Superior Court, supra,* 25 Cal.3d 474, 491.) In admonishing the interviewees as to the confidentiality of the proceedings, the examiners were faithful to the constitutional mandate of article VI, section 18. Moreover, newspaper articles published during the preliminary investigation indicate that the witnesses properly refused to speak to the press about the investigation because they had been admonished that the proceedings were confidential. Thus, the admonishments served their intended purpose.

Nevertheless, a judge certainly has the right to conduct a proper defense in disciplinary actions. Rule 910 of the California Rules of Court provides that "[i]n *formal proceedings* involving his censure, removal, retirement or private admonishment, a judge shall have the right and reasonable opportunity to defend against the charges by the introduction of evidence, to be represented by counsel, and to examine and cross-examine witnesses. He shall also have the right to the issuance of subpoenas for attendance of witnesses to testify or produce books, papers, and other evidentiary matter." (Italics added.) While the language of rule 910 specifies a judge's right to conduct an adequate defense, it also indicates that the right attaches once formal proceedings are instituted. A judge does not have the same right while the Commission is conducting its preliminary investigation.

As we stated in *McCartney, supra,* 12 Cal.3d at page 519, during the preliminary investigation stage the Commission has not yet begun its adjudicatory function, "but is merely attempting to examine citizen complaints in a purely investigatory manner." During this investigatory period the Commission must have the freedom to collect accurate and untainted information. The accuracy of the investigation could be compromised if the witnesses were allowed to discuss the matter with others, especially the judge. For this reason, the examiners conducting the investigation were correct in admonishing the witnesses not to speak to anyone.

Simply stated, a judge does not have the right to defend against a proceeding that has not yet been brought.

---

implementing this section and providing for confidentiality of proceedings." Subdivision (f) has been held to *require* confidentiality in disciplinary proceedings before the Commission. (*Mosk* v. *Superior Court* (1979) 25 Cal.3d 474, 499 [159 Cal.Rptr. 494, 601 P.2d 1030].) Moreover, rule 902(a) of the California Rules of Court provides: "Except as provided in this rule, all papers filed with and proceedings before the Commission, or before the masters appointed by the Supreme Court pursuant to rule 907, shall be confidential until a record is filed by the Commission in the Supreme Court. Upon a recommendation of censure, all papers filed with and proceedings before the Commission or masters shall remain confidential until the judge who is the subject of the proceedings files a petition in the Supreme Court to modify or reject the Commission's recommendation or until the time for filing a petition expires."

Thus, the issue presented is limited to whether the admonishments prevented the judge from conducting reasonable discovery *after* formal proceedings were brought against him. Although we have no reason to disbelieve Judge Ryan's claim that several witnesses refused to speak with him, we nevertheless conclude that he has not made a sufficient showing of prejudice.

The masters correctly placed the burden on the judge to identify (1) which witnesses were admonished, (2) which witnesses refused to speak to the judge *because* of the admonishment, and (3) how such refusal prejudiced the judge's preparation for the hearing. (*McCartney, supra*, 12 Cal.3d at p. 519 ["relief from . . . the Commission's failure . . . may be secured by petitioner only upon a showing of actual prejudice"].) The only showing made by the judge was that substantially all of the witnesses were admonished not to speak to "anyone," that some of the witnesses were admonished not to speak to him personally, and that four individuals actually did refuse to speak with him. This showing was insufficient in light of the clear need to protect confidentiality and accuracy in the preliminary investigation and the fact that the witnesses could have refused to discuss the matter with the judge for a variety of reasons not associated with the admonishment.

Moreover, once formal proceedings were brought, Judge Ryan had the power under rule 910 to subpoena witnesses who were reluctant to speak with him. He also had the power to compel depositions and testimony under Government Code sections 68752 and 68753. The judge never utilized these procedural tools.

Furthermore, the examiners and the masters made a tremendous effort to alleviate any prejudice that may have resulted from the admonishments. Judge Ryan rejected these efforts and refused the offer of a continuance.[4]

For these reasons, we conclude that Judge Ryan was given ample opportunity to conduct adequate discovery. The admonishments did not deny him due process.

B. *Rejection of Requested Argument Time.*

Judge Ryan also contends that he was denied due process because the Commission refused to provide his counsel with adequate oral argument

---

[4] Judge Ryan argues that it would have been "absurd" to accept a continuance when it was offered to him during the hearing, because by that time the witnesses probably suffered from loss of memory due to the passage of time. It is therefore incongruous that he should ask us to remand his case *now* so that he can conduct proper discovery. Surely the witnesses' memories are not getting any better as time goes on.

time to present his defense. The judge requested 2 hours, but the Commission limited argument to 45 minutes for each side. The judge argues that 45 minutes was insufficient to address the numerous charges brought against him and asks that we remand his case to the Commission for further argument.

Rule 914 of the California Rules of Court provides: "[T]he Commission shall give the judge and the examiner an opportunity to be heard orally before the Commission . . . ." However, the rule does not specify a minimum time allotment for oral argument.

Nevertheless, 45 minutes for oral argument is certainly a reasonable time limit. Argument before this court is limited to 45 minutes even in automatic appeals, where the issues are often more numerous and complex. (Cal. Rules of Court, rule 22.)

Judge Ryan had the opportunity in his briefs to address every charge in detail. Moreover, as a result of the questioning by the Commissioners, Judge Ryan's counsel was allowed to argue for a total of 59 minutes. The Commission did not abuse its discretion in limiting the oral argument time. Judge Ryan's petition for remand is denied.

III. *Petition for Review of Commission's Findings and Conclusions.*

A. *Standard of Review.*

■ We independently review the findings of the Commission to ensure that there is clear and convincing evidence to sustain the charge to a reasonable certainty. (*Gonzalez* v. *Commission on Judicial Performance* (1983) 33 Cal.3d 359, 365 [188 Cal.Rptr. 880, 657 P.2d 372]; *Geiler* v. *Commission on Judicial Qualifications* (1973) 10 Cal.3d 270, 275 [110 Cal.Rptr. 201, 515 P.2d 1].) In doing so, we give special weight to the factual determinations of the masters, who are best able to evaluate the truthfulness of the witnesses appearing before them. (*Gubler* v. *Commission on Judicial Performance* (1984) 37 Cal.3d 27, 34 [207 Cal.Rptr. 171, 688 P.2d 551]; *Wenger, supra,* 29 Cal.3d at p. 623.) At the same time, we accord great weight to the legal conclusions of the Commission. (*Wenger, supra,* 29 Cal.3d at p. 623.)

■ Censure or removal from office is appropriate when a judge engages in wilful misconduct or prejudicial conduct. (Cal. Const., art. VI, § 18, subd. (c).) The charge of wilful misconduct refers to "unjudicial conduct which a judge acting in his judicial capacity commits in bad faith." (*Geiler, supra,* 10 Cal.3d. at p. 284.) ■ The lesser charge of prejudicial conduct comprises conduct which the judge undertakes in good faith but

which would nonetheless appear to an objective observer to be unjudicial and harmful to the public esteem of the judiciary. It also refers to unjudicial conduct committed in bad faith by a judge not acting in an official capacity. (*Furey* v. *Commission on Judicial Performance* (1987) 43 Cal.3d 1297, 1304-1305 [240 Cal.Rptr. 859, 743 P.2d 919]; *Gonzalez, supra*, 33 Cal.3d at p. 365; *Geiler, supra*, 10 Cal.3d at p. 284 and fn. 11.)

■ When a judge is acting in an official capacity, the critical distinction between wilful misconduct and prejudicial conduct is the presence of bad faith or malice. (*Furey, supra*, 43 Cal.3d at p. 1304.) In *Wenger* v. *Commission on Judicial Performance, supra*, 29 Cal.3d 615, we enunciated a two-prong test for the determination of bad faith or malice. It must be shown that the judge intentionally "(1) committed acts he knew or should have known to be beyond his power, (2) for a purpose other than faithful discharge of judicial duties." (*Id.* at p. 622, fn. 4.) Both prongs of the *Wenger* test apply an objective, rather than subjective, standard. The objective approach is consistent with our holdings in judicial discipline cases prior to the adoption of the *Wenger* two-prong test. (See *Geiler, supra*, 10 Cal.3d at p. 277.) The objective approach is also consistent with canon 2 of the California Code of Judicial Conduct, which provides that a judge should avoid the "appearance" of impropriety.

B. *Charged Instances of Misconduct.*

1. *The Starks Matter.*

■ Dean H. Starks, an attorney, was in court for an unrelated matter when he observed a friend, Charles Jergo, appearing before Judge Ryan without counsel on several misdemeanor charges. Starks attempted to intervene on behalf of the defendant regarding the issue of release on bail. Judge Ryan thanked Starks, but stated he had already made his decision. Judge Ryan then left the courtroom. Once the court session had ended, Starks approached another attorney in the courtroom and jokingly asked when the next judicial election would be held. Judge Ryan's court clerk, Samantha Spangler, overheard Starks's question and stated that Starks's comment was inappropriate. Starks then began to explain his friendship with Jergo, while Spangler defended the judge's ruling. The conversation became heated and the bailiff had to intervene. Starks did not make any derogatory comments about the judge during the exchange, and the entire conversation occurred out of the judge's presence.

Spangler immediately went to Judge Ryan's chambers and informed him of what transpired. The judge called Starks into his chambers. Following an unsworn recitation of the facts by certain witnesses, Judge Ryan held Starks

in contempt of court and summarily sentenced him to a $200 fine or three days in jail. The judge gave Starks three days to pay the fine.

Starks immediately filed a petition for writ of habeas corpus in the superior court. Soon after, Judge Ryan told the press that he intended to drop the contempt charge. Nevertheless, Judge Ryan asked the district attorney to research contempt law for him and did not inform Starks that he was dropping the contempt order until two weeks later. The contempt order was later invalidated by the superior court.[5]

The masters concluded that Judge Ryan committed wilful misconduct in this matter. The Commission agreed. The Commission determined that Judge Ryan should have known his contempt order was both substantively and procedurally invalid. Moreover, the Commission determined that the judge's continued pursuit of the contempt case was done in bad faith and for an improper purpose.

Judge Ryan completely ignored the procedures required for issuing contempt orders. Starks could not be held in direct contempt because his statements were made outside the judge's presence and after the court session had ended. (Code Civ. Proc., § 1209, subd. (b).)[6] Moreover, the judge failed to follow the procedures for indirect contempt outlined in section 1211 of the Code of Civil Procedure. Section 1211 requires that an affidavit be presented to the judge reciting the facts constituting contempt. No such affidavit was presented. Judge Ryan found Starks guilty of contempt merely on the basis of the unsworn testimony presented in his chambers. Thus, the Commission was correct in concluding that Judge Ryan's contempt order was procedurally invalid.

The Commission also correctly concluded that the contempt order was substantively invalid. The comment made by Starks regarding the next judicial election was mild. Those who accept judicial office must expect and endure such criticism. As one court aptly stated, "the judge must be long of fuse and somewhat thick of skin." (*DeGeorge* v. *Superior Court* (1974) 40 Cal.App.3d 305, 312 [114 Cal.Rptr. 860].) Moreover, Starks's heated discussion with Spangler did not rise to the level of contemptuous behavior. Starks's conduct did not interfere with court proceedings, nor did it lower esteem for the judiciary.

---

[5] Judge Ryan dropped the contempt charge before the superior court heard the matter. Despite the apparent mootness of the issue, the superior court chose to decide the matter to redress any harm the contempt order had on Starks's reputation in the community.

[6] Section 1209, subdivision (b) provides: "No speech or publication reflecting upon or concerning any court or any officer thereof shall be treated or punished as a contempt of such court unless made in the immediate presence of such court while in session and in such a manner as to actually interfere with its proceedings."

In *Cannon* v. *Commission on Judicial Qualifications* (1975) 14 Cal.3d 678 [122 Cal.Rptr. 778, 537 P.2d 898], we held that ignorance of proper contempt procedures, without more, constituted bad faith. (*Id.* at p. 694.) In *Cannon* we emphasized that Judge Cannon was an experienced judge, with more than nine years on the bench. Judge Ryan is also experienced, having served on the justice court bench for four years and on the municipal court bench since 1982. Judge Ryan should have known, or should have researched, the proper contempt procedures in this matter. His failure to do so constituted bad faith under the *Wenger* two-prong test.

However, Judge Ryan's ignorance of contempt procedure was not his only transgression in this matter. Judge Ryan testified that he knew he had made mistakes immediately after he held Starks in contempt. Nevertheless, even after the judge realized his contempt order was invalid, he still pursued the matter with the district attorney and did not notify Starks that the matter was dropped until two weeks later. This conduct also constituted bad faith. We agree with the Commission that Judge Ryan committed wilful misconduct.

### 2. *The Hiter Matter.*

Maxine Hiter appeared as a defendant in a civil matter before Judge Ryan. The judge ordered Hiter to pay a judgment. Hiter was upset and protested the decision, but later apologized for her outburst. As she was leaving the courtroom she remarked, "you can't get blood out of a turnip." Judge Ryan heard the comment and ordered his bailiff to take her into custody for contempt. The judge summarily sentenced her to jail for 24 hours without notice or an opportunity to be heard. Judge Ryan then relied on his bailiff for advice as to the code section to cite in his order. The order improperly cited Penal Code section 166.1 and did not include a summary of facts constituting contempt. Hiter served 24 hours in the county jail.

This is another inexcusable example of Judge Ryan's abuse of the contempt power. Once again, the judge completely ignored contempt procedures. He failed to return Hiter to court to inform her that she was in contempt. Moreover, he never gave her a chance to respond to the contempt order. Judge Ryan also committed unjudicial conduct in relying on his bailiff for the legal citations to put in his order.

As we stated in the Starks matter, *ante,* wilful ignorance of contempt procedures by an experienced judge constitutes bad faith. Although the masters concluded that the judge's conduct was merely prejudicial, we agree with the Commission that Judge Ryan committed wilful misconduct in this matter.

### 3. *The Wiggins Matter.*

 David Wiggins appeared before Judge Ryan on a charge of driving under the influence. Judge Ryan offered him a "no time" disposition at the pretrial conference. Wiggins rejected the offer and requested a jury trial. The judge then privately told Deputy District Attorney Jess Bedore that he was going to teach Wiggins's attorney a lesson for seeking a jury trial. The judge said he would sentence Wiggins to 30 days in jail if the jury convicted him. When Bedore expressed reservations, Judge Ryan said the sentence would be for refusing the standard plea bargain. However, Judge Ryan added that he could further justify the long sentence by stating that Wiggins committed perjury during his trial.

Wiggins was convicted by the jury. Judge Ryan, in accordance with his pretrial statement to Bedore, sentenced Wiggins to 30 days in jail, plus fines and assessments. The sentence was unusually severe for such a conviction. Wiggins's attorney asked the judge to state his reasons for the sentence on the record. Judge Ryan refused. The next day the judge made comments to the press which appeared on the front page of the local newspaper. Judge Ryan told the press that the Wiggins sentence was intended to discourage costly and time-consuming jury trials and that "there had to be some incentive not to go to trial."[7]

Wiggins brought a habeas corpus action in the superior court challenging the sentence imposed. Judge Ryan hired a private attorney at county expense to defend his sentence. When Judge Ryan was ordered by the superior court to justify his sentence, but only after the judge had exhausted his appellate remedies, he stated that the sentence was justified because of Wiggins's perjury at trial.

The masters and the Commission both determined that the judge committed wilful misconduct in this matter.

In the case of *In re Lewallen* (1979) 23 Cal.3d 274 [152 Cal.Rptr. 528, 590 P.2d 383, 100 A.L.R.3d 823], we held that a judge is precluded from imposing a more severe sentence based on the accused's election to proceed to trial. Such conduct by a judge chills the exercise of the constitutional right to trial by jury. (*Id.* at p. 281.)

---

[7]Judge Ryan is separately charged with improperly communicating with the press. To avoid the danger of double-counting misconduct arising from the same activity, we discuss the details of the press charges *infra*. Nevertheless, we include some of Judge Ryan's statements to the press at this point because they provide evidence of his improper motives in sentencing Wiggins.

Although trial judges have broad sentencing discretion, clear and convincing evidence supports the Commission's determination that Judge Ryan based his sentence on improper factors. The judge stated to Bedore that he would teach Wiggins's attorney a lesson. He also refused to state his reasoning for the sentence to Wiggins's attorney, but admitted to the press that there had to be some incentive to plea bargain. Moreover, the judge privately told Bedore that he could support the sentence by claiming that Wiggins committed perjury during trial, even though the trial had not yet occurred. Then, when the superior court ordered the judge to justify the sentence, Judge Ryan relied on his fabricated allegation of perjury despite the fact that perjury had never been charged or determined.

The misconduct in this matter is especially serious because it indicates that the judge was willing to fabricate justifications for a challenged ruling. This is misconduct of the worst kind, evidencing moral turpitude and dishonesty. We agree with the Commission that Judge Ryan committed wilful misconduct.

### 4. *The Jacks Matter.*

Robert Jacks appeared at a preliminary hearing in Judge Ryan's court to answer on a felony sodomy charge. After the preliminary hearing, the judge learned that the district attorney intended to prosecute on misdemeanor charges. The judge called the district attorney ex parte and urged him to pursue the matter as a felony.

The judge's misconduct did not prejudice the defendant. The district attorney did not follow the judge's suggestion to pursue the matter as a felony and the judge had nothing further to do with the case. Nevertheless, the fact that no harm was done to defendant does not lessen the judge's culpability.

Although the masters and the Commission both concluded that this conduct was merely prejudicial, we conclude that it constituted wilful misconduct. Judge Ryan attempted to intrude into the charging authority of the administrative branch of government. Moreover, he deprived the defendant of an impartial magistrate by advocating a harsher charge.

In *Gonzalez* v. *Commission on Judicial Performance, supra,* 33 Cal.3d 359, we addressed similar misconduct. In that case Judge Gonzalez attempted to persuade the district attorney to drop charges in matters that were not before the judge. We concluded that such activity constituted wilful misconduct. (*Id.* at 369.)

Applying the *Wenger* test (*supra*, 29 Cal.3d 615) to the case at bar, Judge Ryan knew or should have known that his conduct was beyond his lawful authority, and the purpose of his conduct, viewed objectively, went outside the scope of the judicial function. Judge Ryan acted in bad faith and his misconduct was wilful.

### 5. *The Handcock Matter.*

In the midst of a criminal jury trial involving a hit-and-run accident, Judge Ryan conducted his own investigation of the matter. Without notice to the parties, the judge directed his bailiff to contact a local auto dealer's parts manager. The judge wanted to obtain a rear light lens for the type of vehicle driven by defendant, so that he could compare the lens with trial evidence. The judge then went on a lunch break, sought out the parts manager with the lens, and determined that the lens matched defendant's car. Back in court, the judge interrupted the defense case and called the parts manager as the court's own witness. The judge did this with minimal notice to the parties and over objection from both sides. The evidence presented by the judge was extremely damaging to defendant's case.

Defendant's resulting conviction was later set aside by the appellate department of the superior court because of Judge Ryan's misconduct. (*People v. Handcock* (1983) 145 Cal.App.3d Supp. 25 [193 Cal.Rptr. 397].) The court found no authority for the judge's investigation. (*Id.* at p. Supp. 32.) Moreover, the appellate department also held that although a judge may call and examine witnesses (Evid. Code, § 775), the manner in which Judge Ryan placed his own witness on the stand (by interrupting the defendant's testimony) seriously prejudiced the defendant. (*Handcock, supra,* 145 Cal.App.3d at p. Supp. 31.)

The masters and the Commission both determined that the judge's conduct was prejudicial.

*Wenger* v. *Commission on Judicial Performance, supra,* 29 Cal.3d 615, involved similar misconduct. In that case Judge Wenger conducted his own investigation, suspecting that one of the parties had made false statements in the briefing. The Commission found that Judge Wenger " 'should have known that it was beyond his lawful authority to conduct an ex parte investigation . . . .' " (*Id.* at p. 632.) The Commission determined that Judge Wenger's conduct was prejudicial. We agreed, concluding: "By undertaking a collateral investigation [the judge] abdicated his responsibility for deciding the parties' dispute on pleadings and evidence properly brought before him." (*Ibid.*)

We conclude that Judge Ryan's handling of the Handcock case was improper and constituted prejudicial conduct.

### 6. *The Merkle Matter.*

Madeleine Merkle was charged with various misdemeanor drug violations. Judge Ryan ordered her into the drug diversion program. Later, the probation department sought to have Merkle removed from the program, alleging that she was not complying with program rules. The probation department sought to have criminal proceedings reinstituted.

Merkle was called into the judge's chambers to discuss the matter. A deputy district attorney, a deputy public defender and the judge's clerk were also present. During the conversation, Merkle, who was wearing a low-cut sweater, bent over several times to remove documents from her purse. Thereafter the judge dismissed all criminal charges against her. When his clerk asked why the charges had been dropped, Judge Ryan replied, "she showed me her boobs."

Judge Ryan is charged with issuing his order to dismiss Merkle's criminal charges for improper personal reasons. The judge contends that his comment was only a joke and that his decision was based on the documents Merkle removed from her purse, which showed that she had successfully completed the drug diversion program.

The masters determined that the charge against Judge Ryan was not proven. However, the Commission disagreed, concluding that the charge was proven and that Judge Ryan's conduct was prejudicial.

Although there is much to find wrong with Judge Ryan's "joke," we nevertheless cannot exceed the scope of the formal charge brought against him. (*Wenger, supra,* 29 Cal.3d at pp. 638-639; *Cannon, supra,* 14 Cal.3d at p. 696.) We conclude that although Judge Ryan's comment was in very poor taste, the charge that he based his order on improper personal reasons has not been proven by clear and convincing evidence. While inferences may be drawn from the record that the documents presented by Merkle did not justify the judge's order,[8] we nevertheless agree with the masters that the

---

[8] The examiners enumerate the following facts in support of their position that Judge Ryan made his ruling for improper reasons: (1) the probation department reported to Judge Ryan that Merkle had not attended the counselling program and had failed to report regularly to the department; (2) the deputy public defender did not argue for dismissal of the case and did not believe Merkle's chances for reinstatement to the diversion program were good; (3) if Merkle did have proof of completion of the program, she did not bother to show it to her own attorney prior to the hearing; (4) the district attorney and the deputy public defender who were present at the time cannot remember what proof Merkle offered to the judge, and both

testimony is evenly balanced on the question. The witnesses present at the hearing testified that Merkle gave the judge documents that she said proved her completion of the diversion program. Those documents were not placed into evidence. Thus, we cannot find clear and convincing proof that the documents submitted by Merkle did *not* provide an adequate basis for Judge Ryan's ruling. We defer to the masters' findings of fact and dismiss the charge.

### 7. *The Mitchell Matter.*

■ Deborah Mitchell pled guilty in Judge Ryan's court to a violation of the Vehicle Code (unlawful taking or driving of an automobile). Judge Ryan suspended execution of sentence and ordered two years probation. As a condition of probation, Judge Ryan committed Mitchell to the county jail for 20 days, but ordered that she serve the time in the work-release program.

The probation department subsequently terminated Mitchell from the work-release program because of an alleged back injury. Mitchell notified Judge Ryan of the termination and the judge scheduled a hearing in the matter. Over objection, Judge Ryan reinstated Mitchell into the program. When the probation department again terminated Mitchell from the program because she refused to comply with program rules, the judge again scheduled a hearing. After being advised by the deputy county counsel that he had no authority to act in the matter, Judge Ryan threatened to obtain "the most expensive lawyer that he could find" if his actions were challenged. Writ proceedings were pursued by the county counsel and Judge Ryan hired a private attorney to represent the court, failing to comply with a county requirement that he submit a written request to hire counsel. The judge later billed the county for counsel's services. The superior court subsequently determined that Judge Ryan had unlawfully ordered Mitchell into the work-release program. Both the masters and the Commission found the judge's conduct to be prejudicial.

Penal Code section 4024.2 provides that the administrative official in charge of county correctional facilities may offer a voluntary work-release program in lieu of jail time.[9] Subdivision (a) of section 4024.2 states that the

---

were surprised at the dismissal of the case; (5) the deputy public defender was so surprised by the dismissal that he consulted other members of the bar to determine his responsibilities; and (6) there is no documentary proof of Merkle's completion of the program in the court file.

[9] Penal Code section 4024.2 provides in pertinent part: "(a) Notwithstanding any other provision of law, the board of supervisors of any county may authorize the sheriff or other official in charge of county correctional facilities to offer a voluntary program under which any person committed to such facility may perform a minimum of 8 and a maximum of 10

program may only be offered to someone already committed to the correctional facility. Moreover, subdivision (c) provides that a person is eligible for the program at the discretion of the administrative official in charge of the program, subject to the fitness of the person for the program and compliance with the rules of the program.

As the superior court correctly held, Judge Ryan did not have authority under Penal Code section 4024.2 to order Mitchell into the work-release program. A judge has the power to commit a person to a correctional facility, but then the administrative official in charge of the facility has the discretionary power to offer work release if the person is deemed eligible under the rules of the program.

Thus, Judge Ryan erred in twice ordering Mitchell into the work-release program. Moreover, although the superior court admitted that the question of Mitchell's due process right to a hearing upon termination from the program was legitimately raised, the judge nevertheless should have appointed counsel for Mitchell so that *she* could seek habeas corpus relief. Instead, Judge Ryan hired a private attorney to defend his actions. He then billed the county for the attorney fees.

This is another instance where the judge became personally embroiled in a case before him. He exhibited bad faith in threatening to retain "the most expensive lawyer that he could find." Nevertheless, we do not find wilful misconduct here, because the record indicates that the judge may have been genuinely concerned with Mitchell's situation. We do conclude, however, that the judge's improper actions constituted prejudicial conduct.

### 8. *The Cabrera Matter.*

▮ Rick Cabrera, represented by the public defender, pled guilty to two misdemeanor counts in Judge Ryan's court. Cabrera subsequently failed to appear for sentencing and a bench warrant issued. After apprehension, Cabrera was again brought before Judge Ryan. Without notice to Cabrera's counsel, the judge asked Cabrera whether he wanted to proceed

---

hours of labor on the public works or ways in lieu of one day of confinement . . . . [¶] (b) The board of supervisors may prescribe reasonable rules and regulations under which such labor is to be performed and may provide that such persons wear clothing of a distinctive character while performing such work. . . . [¶] (c) Nothing in this section shall be construed to require the sheriff or other such official to assign labor to a person pursuant to this section if it appears from the record that such person has refused to satisfactorily perform labor as assigned or has not satisfactorily complied with the reasonable rules and regulations governing such assignment . . . . [¶] A person shall be eligible for work release under this section only if the sheriff or other such official in charge concludes that such person is a fit subject therefor."

with sentencing without his attorney present. Cabrera said, "I don't see if it's going to make any difference," and then indicated that he wanted to "get it over with." Judge Ryan sentenced Cabrera to jail. Cabrera's defense attorney then challenged the judge's action in a petition for writ of habeas corpus. In granting habeas corpus relief, the superior court held that counsel should have been formally notified of the sentencing and that Cabrera did not make a knowing and intelligent waiver of the right to counsel. Both the masters and the Commission found that the judge's conduct was prejudicial.

We agree that Judge Ryan erred in failing to notify Cabrera's counsel of record prior to sentencing. (*In re Haro* (1969) 71 Cal.2d 1021, 1028-1029 [80 Cal.Rptr. 588, 458 P.2d 500]; *In re Martinez* (1959) 52 Cal.2d 808, 813 [345 P.2d 449].) He also erred in accepting an invalid waiver of counsel. We held in *Gonzalez* v. *Commission on Judicial Performance, supra*, 33 Cal.3d 359, that conducting judicial proceedings in the absence of counsel constitutes judicial misconduct. (*Id.* at p. 372.) In that case, Judge Gonzalez conducted proceedings without waiting for counsel to arrive, claiming that he abhorred tardiness. We found Judge Gonzalez had committed wilful misconduct. (*Ibid.*)

Given Cabrera's statement that he wanted to proceed without counsel, we do not believe the judge's actions rise to the level of wilful misconduct. We conclude that the judge committed prejudicial conduct in this matter.

### 9. *The Burgess Matter.*

■ Defendant Burgess was represented by counsel and pled guilty to a misdemeanor charge. He was placed on formal probation for three years. Many months later, the probation department petitioned for revocation of probation based on Burgess's subsequent criminal convictions. Burgess appeared in Judge Ryan's chambers for the revocation-of-probation proceedings. There was no court reporter present. The judge asked Burgess if he wanted an attorney. Burgess said that he *did*. The minute order indicates that Judge Ryan then appointed a public defender to represent Burgess. However, without waiting for appointed counsel to arrive, the judge asked Burgess if he had done the acts alleged in the petition to revoke parole. Burgess admitted that he had. The judge then turned to the probation officer, who was present at the hearing, and directed her to prepare a report and have it ready for Burgess's sentencing. With that, the hearing was concluded.

The masters and the Commission both determined that Judge Ryan's conduct was prejudicial. Although there is conflicting testimony in the

record as to whether Burgess actually requested counsel, the masters found that he did make such a request. We defer to the masters' finding of fact on this question. (*Gubler* v. *Commission on Judicial Performance, supra,* 37 Cal.3d 27, 34.) Thus, we conclude that the judge ignored Burgess's request for counsel and continued to extract a confession from him. Although there is no evidence of bad faith, the judge's conduct was prejudicial.

### 10. *Court Reporter Charges.*

 Judge Ryan is charged with three instances of prejudicial conduct for failing to provide a court reporter in criminal hearings. The pertinent facts surrounding these matters may be summarized briefly. The court administrator for Placer County advised all members of the court, including Judge Ryan, of the case of *In re Armstrong* (1981) 126 Cal.App.3d 565 [178 Cal.Rptr. 902], which held that it is a violation of due process and equal protection to deny a verbatim record upon request in all municipal court criminal proceedings. Funds were appropriated in January 1983, for reporters to serve the Municipal Court of Placer County on a daily basis. Judge Ryan took the position that reporters were not required and directed the clerk of his court to discharge the reporters assigned to his courtroom unless a timely request was made for their presence. To ensure that a court reporter would be present in Judge Ryan's courtroom, the district attorney's office began stamping a request for a court reporter on every pleading or motion filed. However, individuals appearing without counsel were not advised of their right to have a reporter, and hence did not know they had to request one.

In one incident, Judge Gilbert of the superior court remanded a matter to Judge Ryan because of Judge Ryan's failure to provide a reporter. Judge Ryan telephoned Judge Gilbert to express his disagreement with the latter's decision and stated that reporters were not required and their presence resulted in an unnecessary expense to the county.

In the Bremer matter, Judge Ryan accepted defendant's waiver of a preliminary hearing in the absence of a court reporter. The superior court remanded the case back to Judge Ryan because of the omission.

The Mitchell matter, discussed previously, involved the judge's unauthorized placement of Mitchell into the work-release program. In a separate disciplinary count against Judge Ryan arising from the same matter, the probation department had requested a reporter at the hearing. The request was denied by Judge Ryan as untimely, because no request had been made prior to the hearing.

Finally, the previously discussed Burgess matter involved the charge that Judge Ryan ignored Burgess's request for counsel. As a separate count of improper conduct, it was alleged that the judge failed to provide a court reporter upon return of the bench warrant and that he also sentenced Burgess without a reporter present.

In all three of the counts enumerated above (Bremer, Mitchell, and Burgess) the masters and the Commission concluded that the judge committed prejudicial conduct. Judge Ryan contends that *Armstrong, supra,* 126 Cal.App.3d 565, required verbatim records only upon request, and that he did provide court reporters whenever a timely request was made. Moreover, Judge Ryan points out that he eventually began to provide court reporters on a regular basis after the district attorney and the board of supervisors made it known that reporters were desired.

The judge correctly interprets *Armstrong* as requiring a court reporter upon request. However, he misperceives the significance of his failure to instruct defendants appearing in propria persona that they had a right to a verbatim record. The judge's stubborn and obstructionist attitude effectively denied those defendants their constitutional right to have a reporter present.

We concur with the masters and the Commission that Judge Ryan's conduct in these matters was prejudicial.

### 11. *Communication With the Press.*

The Commission determined that Judge Ryan made improper comments to the press in four pending cases before him. The Commission stated in its ruling that "[w]hen cases are pending it is entirely improper for a judge to use the media either as a platform or as a method of responding to criticism. In some instances, his comments have drawn unfavorable reaction from the press and in others, prejudiced litigants."

In the Nutrition Site matter, Judge Ryan informed the parties that he would mail them his written decision. A short time later a newspaper reporter learned that the judge had finished his opinion in the case. The reporter came to Judge Ryan's chambers and asked if she could see the decision. Although the judge admitted to the masters that the decision was still only in draft form, he nevertheless showed it to the newspaper reporter and discussed his rationale for deciding the case. Judge Ryan's statements appeared in the local newspaper before the parties received copies of the decision.

The masters and the Commission both concluded that this was prejudicial conduct. We agree. Canon 3A(6) of the California Code of Judicial

Conduct provides: "Judges should abstain from public comment about a pending or impending proceeding in any court . . . ." By showing his decision to the press before it was in final form and by discussing his decision with the press before he had informed the parties of his ruling, Judge Ryan acted improperly.

■ We have previously discussed the Starks matter, which involved the contempt order for Attorney Starks. In a separate count, Judge Ryan is charged with discussing his contempt order with the press while the matter was pending. Specifically, Judge Ryan informed a newspaper reporter that he planned to vacate his order of contempt, but would ask another judge to review the matter. Starks learned of Judge Ryan's intention to vacate the contempt order by reading the local newspaper. Starks did not receive formal notice of Judge Ryan's order vacating contempt for another two weeks.

After stating to the press that he intended to drop the contempt charge, Judge Ryan nevertheless went on to defend his contempt order in the press. He is reported as saying: "I was told [Starks] was really out of line, but since there was something negative said about me and since it involved my clerk, I don't want to appear biased and will let another judge decide." Judge Ryan added that Starks had said "some really rude and nasty things in court," and "[a] judge has to protect the integrity of the court, and it's not proper for loud, derogatory statements to [be] made in fron[t] of the whole courtroom as soon as the judge leaves."

Judge Ryan made his statements to the press while the validity of his contempt order was pending in the superior court on petition for writ of habeas corpus. As canon 3A(6) of the California Code of Judicial Conduct expressly states, the judge acted improperly in commenting on pending matters. We agree with the masters and the Commission that Judge Ryan's conduct was prejudicial.

■ In the McGinnis matter, the judge is charged with defending his rather unique disposition in a "dog custody" case to the press.[10] The masters

---

[10] Judge Ryan argues in his response brief that the McGinnis matter is not properly before us because the Commission specifically incorporated into its decision certain exhibits (examiners' exhibits 14, 15, 16-22, 25, 26, 28-31) as the basis for its conclusion of prejudicial conduct, and none of those exhibits involve the McGinnis matter. Judge Ryan's argument is without merit. Exhibit 56 is a newspaper article pertaining to the McGinnis case. Although the Commission did not list this exhibit in making its determination, the Commission did state that it was relying on *four* charges of improper communication with the press. Moreover, because we independently review the record in disciplinary proceedings (*Furey, supra,* 43 Cal.3d at p. 1304), we are not limited by the Commission's failure to cite certain exhibits in support of its determinations.

and the Commission determined Judge Ryan's comments to be prejudicial. However, the record indicates that all of the statements made by the judge and reported in the press were statements that he made from the bench while the press was present in the courtroom. Judge Ryan merely declared that the parties had reached a settlement and announced what amounted to an interlocutory judgment granting temporary joint custody of the dog to both parties. Although the examiners allege that Judge Ryan was "grandstanding" for the press during the court session, we do not find clear and convincing evidence of any impropriety in this matter.

▮ Finally, in the previously discussed Wiggins matter, which involved the judge's imposition of a 30-day jail sentence because Wiggins requested a jury trial, the judge is separately charged with defending his sentence by discussing the pending matter with the press and writing a letter to the editor explaining his sentence. There is clear and convincing evidence to support the findings of the masters and the Commission, and we agree with the Commission that the judge committed prejudicial conduct.

### 12. *Offensive Jokes to Female Attorneys.*

▮ The Commission determined that Judge Ryan committed two acts of prejudicial conduct when he told offensive jokes to female attorneys in his chambers.

The judge admits telling the following joke while two female attorneys, among others, were present in his chambers: "It's during the period of creation and God has just gone ahead and has made—he's made the earth and the stars and the wind and some of the animals. He's still creating things. Adam and Eve have been created. They discover each other and they discover the physical portions of each other and they lay down and they make love. When they finish, Eve leaves for a little while and then returns. When she returns, she—or Adam says, where have you been? She says, I went to the stream to wash off. And Adam says, gee, I wonder if that's going to give a scent to the fish?" The two female attorneys were offended by the joke.

In another count, two female attorneys, among others, appeared before the judge in his chambers to conduct a preliminary hearing. Judge Ryan asked the two female attorneys if they knew the difference "between a Caesar salad and a blow job." When the attorneys responded that they did not know the difference, the judge said, "Great, let's have lunch." The attorneys were offended.

Judge Ryan intended these comments as jokes. He later apologized to some of the individuals present. The masters found that the judge had

indeed made the comments, but that his conduct was not prejudicial. The Commission disagreed, concluding that prejudicial conduct existed.

It is sometimes difficult to determine the line between "extremely poor taste" and "conduct prejudicial to the administration of justice that brings the judicial office into disrepute." Nevertheless, we believe the fact that the judge was acting in his official capacity when he told the Caesar salad joke provides ample support for the Commission's determination that the judge committed prejudicial conduct. When Judge Ryan told the Caesar salad joke, the two female attorneys were appearing before him for a preliminary hearing. The fact that the hearing was conducted in Judge Ryan's chambers makes little difference; his conduct was just as improper as if he had told the joke from the courtroom bench.[11]

In *Geiler* v. *Commission on Judicial Qualifications, supra,* 10 Cal.3d 270, we removed Judge Geiler from office because of his vulgar and profane statements and conduct, among other things. Two of Judge Geiler's vulgar comments are illustrative: (1) Referring to his female court clerk while she was present, Judge Geiler asked other men in his chambers, "How would you like to eat that?" (2) In conversations with his female clerk, the judge occasionally asked, "Did you get any last night?" We found the comments made by Judge Geiler to be prejudicial.

As we stated in *Gonzalez* v. *Commission on Judicial Performance, supra,* 33 Cal.3d 359, "[d]erogatory remarks, although made in chambers or at a staff gathering, may become public knowledge and thereby diminish the hearer's esteem for the judiciary—again regardless of the speaker's subjective intent or motivation. The reputation in the community of an individual judge necessarily reflects on that community's regard for the judicial system." (*Id.* at p. 377.) We conclude that Judge Ryan's offensive and insensitive jokes constituted prejudicial conduct.

### 13. *Absenteeism.*

 The masters and the Commission also determined that Judge Ryan committed two counts of prejudicial conduct because of his practice of leaving the courthouse after his calendars were completed, usually in the early afternoon. The evidence shows that Judge Ryan regularly left the courthouse at 2 p.m. each day. On Fridays, he often left in the morning and did not return. Numerous witnesses testified that the judge's short hours made it necessary for police and deputy district attorneys to bring warrants

---

[11] It is unclear from the record why the attorneys were present when Judge Ryan told the Adam and Eve joke. Nevertheless, we conclude from the evidence available that telling such a joke in chambers constituted unjudicial conduct.

and other matters in the morning before the judge left. Moreover, many witnesses testified that the municipal court was in need of another judge, but that the board of supervisors refused to provide one until it was shown that all of the judges were currently working full-time.

In the Fitzpatrick matter, the Commission determined that the clerk had to tell members of the public that Judge Ryan was not available because he had gone for the day. In another count, the Commission found that the judge's abbreviated hours caused the presiding judge to issue an order providing that all judges had to advise the presiding judge if they completed their judicial business and intended to leave before 3 p.m.

Canon 3B(1) of the California Code of Judicial Conduct provides: "Judges should diligently discharge their administrative responsibilities, maintain professional competence in judicial administration, and facilitate the performance of the administrative responsibilities of other judges and court officials." As canon 3B(1) makes clear, administrative duties must be discharged with the same diligence as adjudicative duties. It was therefore improper for Judge Ryan to leave the moment his adjudicative duties were completed. The fact that police officers, deputy district attorneys and other members of the public could not reach the judge in the afternoons supports the conclusion that the judge failed to fulfill certain aspects of his judicial function.

We therefore agree with the Commission that Judge Ryan's work routine amounted to prejudicial conduct.

IV. *Aggravating and Mitigating Circumstances.*

■ Aggravating and mitigating circumstances are appropriate factors to consider in determining judicial discipline. (See *Furey, supra*, 43 Cal.3d 1297, 1319-1320.) The record in this case does not provide evidence of aggravating circumstances. Although Judge Ryan presented mitigating evidence, such evidence is insufficient to reduce the level of discipline.

V. *Disposition.*

Petitioner's application for a rehearing was denied June 30, 1988, and the opinion was modified to read as printed above.

■ We conclude that Judge Ryan has committed four acts of wilful misconduct and fourteen acts of prejudicial conduct. We dismiss two charges of misconduct that have not been proven by clear and convincing evidence.

The judge's conduct exhibits a pattern of personal embroilment in the cases assigned to him. He has lost his temperance and objectivity on several occasions, resulting in prejudice to the parties appearing before him or in

abuse of his contempt power. He has attempted to defend his position in the courts and in the media with little regard for procedure or judicial decorum.

"The purpose of these proceedings is not to punish errant judges but to protect the judicial system and those subject to the awesome power that judges wield." (*Furey, supra,* 43 Cal.3d at p. 1320.) That purpose will best be served by adopting the recommendation of the Commission that Judge Ryan be removed from office.

We order that Judge Richard Ryan, Municipal Court Judge of the Roseville-Rocklin Judicial District, Placer County, be removed from office. Because the misconduct for which he is removed does not amount to grounds for disbarment, he shall, if otherwise qualified, be permitted to practice law (Cal. Const., art. VI, § 18, subd. (d); see *Wenger* v. *Commission on Judicial Performance, supra,* 29 Cal.3d at p. 654), on condition that he pass the Professional Responsibility Examination (see *Gonzalez* v. *Commission on Judicial Performance, supra,* 33 Cal.3d at p. 378). This order is effective upon the finality of this decision.

Petitioner's application for a rehearing was denied June 30, 1988, and the opinion was modified to read as printed above.