**People of the State of Illinois, Plaintiff-Appellee,
v. John E. Gordon, Defendant-Appellant.**

**Gen. No. 68–134.**

Fifth District.

November 5, 1969.

Rehearing denied January 2, 1970.

D. A. McGrady, McGrady & Madden, of Gillespie, for appellant.

A. Paul Rosche, State's Attorney, of Hillsboro (Otto E. Funk, of counsel), for appellee.

GOLDENHERSH, P. J.

Defendant, John E. Gordon, was tried by jury in the Circuit Court of Montgomery County and convicted of the offense of Involuntary Manslaughter (c 38, § 9–3, Ill Rev Stats 1967). The court denied motions for a new trial and in arrest of judgment, denied defendant's petition for probation, heard evidence in aggravation and mitigation, and sentenced defendant to the Illinois State Penitentiary for not less than 2, nor more than 7 years.

The indictment is in 9 counts. There are 8 counts charging Murder (c 38, § 9-1, Ill Rev Stats 1967), 5 allege an intent to kill or do great bodily harm to Allan Dean Gordon, and 3 allege an intent to kill or do great bodily harm to Deanna Gordon. The ninth count, charging Involuntary Manslaughter, accuses defendant of reckless acts likely to cause death or great bodily harm to Deanna Gordon or Allan Dean Gordon. An order of Nolle Prosequi was entered as to two counts of Murder, and the case was submitted to the jury on the remaining six counts of Murder and one count charging Involuntary Manslaughter. The jury found the defendant not guilty of Murder.

The victim of the homicide was defendant's two-year-old son, Allan Dean Gordon. Dr. J. Robert Rebillot testified that the boy died of a gunshot wound to the right portion of his skull. He saw him in the emergency room St. Francis Hospital in Litchfield. The defendant was holding the boy, was in a state of hysteria, and would not release the child. Litchfield police officers forcibly took the child from defendant's arms, Dr. Rebillot administered thorazine, and defendant was then shackled to a wheel chair by a strap around his waist, and shackles on his wrists and ankles.

Ernest Felkel, Chief of Police in Litchfield, testified that while he was in the emergency room, after defendant was shackled, Deanna Gordon came over to where defendant was sitting and defendant said "Get the hell away from me and leave me alone." She replied "It wasn't your fault." The witness identified photographs of the interior of defendant's home, and described the floor plan, furnishings and the bedroom in which the shooting occurred. He stated there was a 16-gauge shotgun lying in a clothes closet with its muzzle pointing north, and the stock pointed toward the bed.

Robert Hough, a funeral director in Raymond, testified that in response to a call he went to the Walsh farm.

He saw defendant in an automobile holding his child. Defendant would not release the boy but agreed to ride in the ambulance, holding the child, and was driven to the hospital in the ambulance.

Harry Gerard, Mr. Hough's helper, was with him at the time. Both he and Hough testified that defendant struck Hough with his fist prior to agreeing to go to the hospital.

Felkel, Hough and Gerard all expressed the opinion that defendant was intoxicated.

Jerome S. Keller, Sheriff of Montgomery County, testified that he saw defendant at the hospital, went to his home, later saw defendant at the county jail, advised him as to his rights in accordance with "Miranda," defendant waived his right to remain silent and told him he had gone to work the day before the occurrence, the truck he was to drive broke down, he worked on it a portion of the day, started drinking and returned home at 4:00 a. m. on January 18, 1968, the date of the shooting, in an intoxicated condition. He accused his wife, Deanna, of having an affair, became angry, broke a lamp and end table, left home at 5:00 a. m. and returned at noon. He heated some soup and wieners, woke Allan Dean and brought him to the table in the kitchen. He did not remember getting the gun down, remembered Deanna's asking him to "put the gun up for the children's sake," the gun went off and he cannot explain why. He had threatened his wife on past occasions but did not remember threatening her that day. The shell in the magazine of the shotgun had been fired.

Upon motion of the State's Attorney, and over defendant's objection, the court called Deanna Gordon as the court's witness. In response to the court's interrogation, she testified defendant came home on the morning in question at 4:00 a. m., left, and returned home at noon. When he came home at noon she was asleep on the couch. He asked if the children had eaten, Allan woke up, defendant brought him to the table, Brent, their younger

263

child, awoke and she brought him to the table, defendant prepared lunch for himself and the children, defendant went into the bedroom, she started into the bedroom and as she pulled back the curtain between the kitchen and the bedroom, the gun went off. Some of the pellets struck her hand. Defendant was picking Allan up, they got in their car, she driving, defendant holding Allan in the back seat. She stopped at the Walsh farm and asked them to call an ambulance. At the hospital she was given a shot, defendant was shackled to a wheel chair, he asked how she felt, and "I told him I didn't blame him for what happened. I knew it was an accident."

Upon cross-examination by the State's Attorney, she testified her husband left home at 5:00 a. m. on January 17, 1968, to go to work and returned highly intoxicated at 4:00 a. m. the next morning. He told her people had been talking about her going out with somebody else. Upon being asked by the State's Attorney if this was true, she replied "Well, yes." He did not threaten her. He left and returned at noon. She could not say what attracted her to the bedroom, but as she pulled back the curtain to enter, the gun went off. Defendant was lying on the bed with the gun across his body, the barrel toward the door she entered. Allan was at the opposite end of the bed. Upon being shown the statement she had signed she did not recall having said that she had asked defendant to "put up the gun for the children's sake." She did not recall having stated she "heard a clicking noise like the gun being pumped." Defendant had threatened to shoot her on several past occasions, but not on that day.

On cross-examination by defense counsel, she stated she had not taken prior threats seriously, and his demeanor when he said it was "mostly he was just joking." She had not been in fear of his carrying out the threats. He was fond of the children, and particularly devoted to Allan. Defendant had beaten her on past occasions. In recent weeks they "were getting along fine."

Mr. Keller, recalled by The People, testified Mrs. Gordon had, in fact, made the statements about which she was interrogated.

Defendant testified that after having lunch he noticed the gun rack in the bedroom was hanging loose, so he fixed it. He put two guns back in the rack, and was looking at the shotgun. He does not remember a shot, and the next thing he remembers is seeing Allan on the floor. He did not know anyone was in the room with him. He did not pull the trigger, had no intention of discharging the gun, and does not know how it went off. The next thing he remembers is being told by Dr. Rebillot that the boy was dead.

As his first ground for reversal, defendant contends that the offenses of Murder and Involuntary Manslaughter "are incompatible and cannot emerge from one factual situation." He argues intent is not an essential element of Involuntary Manslaughter, and it is unjust and unfair to require a defendant to simultaneously defend against charges, one requiring proof of intent, and the other reckless performance of an act likely to cause death.

██ ██ Prior to enactment of the Criminal Code of 1961 (c 38, § 1 et seq., Ill Rev Stats) an indictment for murder involved all other grades of homicide, and included a charge of manslaughter. The People v. Lewis, 375 Ill 330, 335, 31 NE2d 795. As defined in the Criminal Code, the common element of the offenses of Murder and Involuntary Manslaughter is the killing of an individual without lawful justification. The difference is that for the homicide to be murder there must be present the element of intent, knowledge, or attempt to commit, or commission of a felon, while in Involuntary Manslaughter the acts, whether lawful or unlawful, must be such as are likely to cause death or great bodily harm and must be done recklessly. The Criminal Code contains the following definition of Included Offense:

265

"Included Offense" means an offense which

"(a) Is established by proof of the same or less than all of the facts or a less culpable mental state (or both), than that which is required to establish the commission of the offense charged, or. . . ."

"Recklessness" as defined in section 4–6 is a less culpable mental state than "Intent" (§ 4–4) or "Knowledge" (§ 4–5), and Involuntary Manslaughter is clearly an "included offense" in an indictment charging "Murder." Offenses based on the same act may be joined (c 38, § 111–4(a)) and differences in mental state required for the offenses do not prevent joinder.

██ ██ Defendant contends the court refused to permit him to interrogate the witness Felkel as to whether he had been convicted of a felony. Only convictions of infamous crimes may be brought out upon cross-examination of a witness, The People v. Birdette, 22 Ill2d 577, 177 NE2d 170, and the objection to the question in the form in which it was asked was properly sustained.

Defendant contends the court erred in calling Deanna Gordon, over defendant's objection, as the court's witness. The record shows that after Dr. Rebillot testified the State's Attorney advised the court that The People must rely upon the testimony of Deanna Gordon, that she was the only eyewitness, "she is hostile to us," he was unable to vouch for her testimony, and moved that she be called as the court's witness. The State's Attorney filed an affidavit in support of the motion in which he stated that Deanna Gordon, immediately after the occurrence, talked with the sheriff and appeared to be cooperative, she became progressively more hostile, he had difficulty examining her at a hearing on defendant's motion to be admitted to bail and before the grand jury, he had observed public displays of affection between her and the defendant, without her testimony justice might not be accomplished, and the ends of justice require she be called as the court's witness. The court reserved its ruling at that

time, and subsequently allowed the motion, and called her as the court's witness.

Under section 155-1 of the Code of Criminal Procedure (c 38, § 155-1, Ill Rev Stats 1967) spouses may testify for or against each other except that neither may testify as to any communication or admission made by either to the other, or as to any conversation between them during coverture, except under enumerated circumstances not here present. In The People v. Moriarity, 33 Ill2d 606, 213 NE2d 516, the court called the defendant's wife as the court's witness, and on review the Supreme Court said at page 615:

"The practice of the court's calling a witness at the request of the prosecution in a criminal case was first enunciated in Carle v. People, 200 Ill 494, where the court approved the calling of an eyewitness to a crime for whose veracity the State's Attorney could not vouch. It was later stated in People v. Cardinelli, 297 Ill 116, that the purpose of the practice was to prevent a miscarriage of justice by having an eyewitness to a crime, for whose veracity neither party will vouch, fail to testify. And while subsequent decisions have held that the practice is not limited to the calling of eyewitnesses (People v. Touhy, 361 Ill 332, 350; People v. Siciliano, 4 Ill2d 581, 590) every decision which has touched upon the subject has counseled that the practice should be sparingly used and restricted to cases where it is shown there might otherwise be a miscarriage of justice. (People v. Johnson, 333 Ill 469; People v. Laster, 413 Ill 224; People v. Bennett, 413 Ill 601; People v. Robinson, 14 Ill2d 325). Further, as indicated in People v. Siciliano, 4 Ill2d 581, 590, a proper foundation must be laid for the calling of a court's witness, which would necessarily consist of the reasons why the party desiring the witness cannot vouch for his veracity, and showing that the testimony of the witness

267

will relate to direct issues and is necessary to prevent a miscarriage of justice. See also: People v. Touhy, 361 Ill 332, 349; People v. Johnson, 333 Ill 469, 473."

■■ Here, the affidavit of the State's Attorney laid a sufficient foundation, and upon examination of Mrs. Gordon's testimony we hold it was not error to call her as the court's witness. It is apparent from the record that without her testimony there is no way to prove what occurred, and this is precisely the type of situation in which the action is proper.

■ ■ Defendant contends the court erred in refusing to give his tendered instructions numbered 9, 12, 13, 15 and 17. In view of Supreme Court Rule 451 providing for use of IPCI instructions, the instructions complained of will not be here set forth. Instruction number 9 was repetitious of defendant's instruction number 8, and upon giving number 8 there was no error in refusing to give number 9. Instruction number 12 was defective in that it instructed the jury that The People must prove every material allegation of the indictment, and no instruction was tendered defining the term material allegations. People v. Hazen, 104 Ill App2d 398, 244 NE2d 424. Instruction number 13 would have been proper if limited to circumstantial evidence, but as tendered was properly refused. The court properly required an amendment to defendant's tendered instruction number 15, and as amended it was properly given. Number 17 was properly refused.

■ Defendant complains of The People's instruction number 3. This instruction correctly defines Involuntary Manslaughter and was properly given.

Although the instructions are not set out in the abstract of the record, we have reviewed them in their entirety, and hold the jury was fairly and adequately instructed.

■ From our examination of the record we conclude there was sufficient evidence to sustain the con-

viction, and in the absence of prejudicial error the judgment of the Circuit Court of Montgomery County is affirmed.

Judgment affirmed.

CLARK and EBERSPACHER, JJ., concur.