*Supp. 27 Opinion
COUZENS, P. J.
Defendant John Handcock appeals from his conviction, following a jury trial, of violating California Vehicle Code section 20002, subdivision (a), commonly known as “hit-and-run” driving. Although stated in varying ways, the primary issue on appeal is whether the trial judge abused his discretion in conducting his own evidence investigation during the trial, then calling his own witness to present to the jury the results of that investigation.
I. Facts
In the late afternoon of October 19, 1981, Barbara Knapp had gone to Royer Park in the City of Roseville, California, to observe her son playing soccer. She parked her white, B-210 Datsun on one of the city streets near the playing field. At approximately 7:30 p.m., Frederic Lohse was walking across the park toward his mother’s house. He heard the sound of a collision, turned, and noticed that a car with headlights on had stopped near a parked white Datsun, then drove away. Mr. Lohse was able to note the license number of the vehicle and the fact that it was a blue foreign car. A few moments later he saw what appeared to be the same blue vehicle stopped under a street light, with a person leaning over and examining the car. Mr. Lohse was unable to identify the defendant as the apparent driver of the vehicle.
Police investigation of the accident produced additional evidence. Five pieces of a tail light lens were found on the bumper of the victim’s car and on the ground. One piece contained a small chip of blue and white paint. A check of motor vehicle records showed that the blue car observed by Mr. Lohse was registered to the defendant. Photographs were obtained of both vehicles. The investigating officer concluded that certain rubber marks on the victim’s bumper matched the black rubber on defendant’s car. It was the officer’s opinion that the suspect vehicle had backed into the victim’s vehicle, causing the fender damage to the victim’s vehicle and breaking the tail lens of the suspect vehicle. The defendant’s father was called as a prosecution witness to establish that the defendant had given him an admittedly false account of at least portions of the accident investigation.
The defendant testified that he did in fact own a blue Subaru. He admitted to being in the park that day and to observing the police investigating the accident. He denied hitting any vehicle or lending his car to any other person. The defendant’s mother recalled seeing her son’s car the morning *Supp. 28 after the accident, but saw no damage whatever to the rear of his vehicle or to the tail lights.
The claimed error occurred during the second day of the trial. The prosecution had rested. The defendant had completed his testimony on direct examination and cross-examination was interrupted by the noon recess. During the recess, and without prior notice to either party, the trial judge removed from evidence one of the photographs of the defendant’s vehicle and the broken lens fragments, and proceeded to a local Subaru dealer. The judge requested an employee in the parts department to produce a tail lens for a vehicle of the type owned by the defendant. The judge then returned to court with the replacement lens and instructed the parts employee to appear after lunch to present testimony.[1]
Counsel for the defendant objected to the court calling the new witness and objected to the fact that there was no time to review the new evidence. Even the district attorney expressed concern over relating the broken lens pieces to the replacement lens found by the judge. The judge rejected these concerns and determined that he would call the parts department employee as his own witness.
The case then continued in open court in the presence of the jury. The defendant had resumed the stand to continue with cross-examination. The judge instructed the defendant to take his seat next to counsel and called the parts employee to the stand. The witness established that the broken pieces of lens did correspond to the replacement lens of a Subaru of the type owned by the defendant. The trial then concluded with the balance of the defense case.
Defendant was convicted by the jury of violating Vehicle Code, section 20002, subdivision (a). This appeal followed.
*Supp. 29 II. Issues
A. Did the trial judge abuse his discretion in calling his own witness?
B. Did the trial judge abuse his discretion in conducting his own evidentiary investigation?
C. Was the trial court’s error, if any, harmless?
III. Discussion
A. The trial judge abused his discretion in the manner in which he called his own witness.
The right, and even the duty, of a trial court to call its own witnesses and to ask questions of witnesses has been repeatedly sanctioned both by legislative and court action as a fundamental component of our judicial system.
“The duty of a trial judge, particularly in criminal cases, is more than that of an umpire; and though his power to examine the witnesses should be exercised with discretion and in such a way as not to prejudice the rights of the prosecution or the accused, still he is not compelled to sit quietly by and see one wrongfully acquitted or unjustly punished when a few questions asked from the bench might elicit the truth. It is his primary duty to see that justice is done both to the accused and to the people. He is, moreover, in a better position than the reviewing court to know when the circumstances warrant or require the interrogation of witnesses from the bench. As was said by the Georgia court of appeals in Hart v. State, 14 Ga. App. 364 [80 S.E. 909]: ‘While great caution should be used in its exercise, the trial judge has the right, in his discretion, to question the witnesses during the progress of a trial, in order to elicit the truth, and this discretion will not be controlled except where it appears that the manner in which the judge exercised his right tended unduly to impress the jury with the importance of the testimony elicited, or would be likely to leave the jury to suppose that the judge was of the opinion that the one party rather than the other should prevail in the case.’”[2] (People v. Golsh (1923) 63 Cal.App. 609, 614-615 [219 P. 456].)
*Supp. 30 The right to call and question witnesses, however, is not unlimited, nor subject only to the whim or caprice of the trial judge. Extreme care must be observed by the court so as not to shift the balance of the case either for or against a party, merely because of the manner in which the court participates in the presentation of evidence. The point was well stated in People v. Campbell (1958) 162 Cal.App.2d 776, at page 787 [329 P.2d 82]: “Judges have been admonished time and time again of their duty to maintain a strictly judicial attitude and to refrain from comment or other conduct which borders upon advocacy. We deem it appropriate to quote in part the remarks of the Supreme Court in People v. Mahoney, 201 Cal. 618, 626-627 [258 P. 607]: ‘Jurors rely with great confidence on the fairness of judges, and upon the correctness of their views expressed during trials. For this reason, and too strong emphasis cannot be laid on the admonition, a judge should be careful not to throw the weight of his judicial position into a case, either for or against the defendant. It is unnecessary to cite the cases bearing on this subject. It is a fundamental principle underlying our jurisprudence.’ When the trial judge officiously and unnecessarily usurps the duties of the prosecutor by taking over the questioning of witnesses and in so doing creates the impression that he is allying himself with the prosecution, harm to the defendant is inevitable. We do not see how any judge could fail to recognize that fact.” Stated differently, “a trial judge should participate in the examination of witnesses in a criminal case in so fair and impartial a manner as to avoid conveying to the jury an impression that he thinks the defendant is guilty of the offense with which he is charged and that he desires them to return a verdict of his conviction.” (People v. Butterfield (1940) 40 Cal.App.2d 725, 731 [105 P.2d 628].)[3]
*Supp. 31 We have concluded that the manner in which the court called its witness far exceeded the proper limitations on judicial intervention at trial. The defendant was physically on the witness stand when the court interrupted cross-examination and called its witness. Other than generally denying that he caused the damage to the victim’s car, the defendant (the first defense witness) had not even completed his own testimony, let alone presented any other evidence regarding the condition of his vehicle or evidence that would corroborate his statement of the case. In removing the defendant from the witness stand and presenting evidence obviously damaging to the defense, the trial judge was transmitting to the jury the unmistakable message that he did not believe the defendant’s story and he would prove it.[4]
The manner in which the trial court acted in calling its witness with only minutes notice to counsel (without any apparent justification for such short notice) compounded defendant’s problems. Not only did the calling of the witness disrupt the orderly presentation of the defendant’s case, the lack of notice prevented either counsel from adequately preparing for questioning or from more fully exploring the ramifications of what the judge sought to admit as evidence.
Considerable latitude is given to a trial judge in the order of proof at trial. (Evid. Code, § 320.) A judge should feel no reluctance to intervene in questioning where necessary to clarify testimony or correct obvious errors in order to avoid confusing the trier of fact or leaving an uncertain record. Where, however, the court undertakes extensive questioning of an existing witness or calls its own witness, in the absence of unusual circumstances, *Supp. 32 the better practice is to do so only after both parties have had a reasonable opportunity to develop their case according to their trial strategy. (People v. Gates (1979) 97 Cal.App.3d Supp. 10, 13 [158 Cal.Rptr. 759].) Common sense and good reason also dictate that whenever reasonably possible the court should consult with all counsel prior to calling new witnesses or presenting evidence neither anticipated. Such an opportunity invites counsel to correct their own errors in their own way and with a minimum of disruption to their case. To exercise such restraint insures judicial impartiality, yet permits the court to meet its responsibility to ascertain the truth.
B. The trial judge abused his discretion in conducting his own investigation.
A more fundamental and troublesome issue is raised by the action of the trial judge in undertaking his own evidentiary investigation without notice to either party. We have found no case reported in any American jurisdiction which discusses the right of a court to conduct an independent investigation under the circumstances as are present in this case.[5]
Unquestionably, a necessary element of the right of a trial court to call witnesses is the right to initiate some elemental inquiry into relevant facts. It is not at all uncommon, for example, for a trial court to determine that it needs certain expert testimony and to initiate some inquiry into who could best provide the testimony and where such witness may be found. Such “investigation,” if it can even be characterized as such, is generally preliminary and most superficial, having little direct bearing on the ultimate presentation of the evidence to the trier of fact. Extensive and unilateral investigation by a trial judge, however, ultimately forces the court to evaluate the evidence discovered to determine its basic validity and to determine whether further investigation is required. When such decisions are made unilaterally, and without the benefit of the thoughts of counsel, there is a danger that the investigation will be truncated, preventing the presentation of other equally relevant, yet conflicting evidence. Unilateral investigation by a trial court, although consistent with the role of an advocate, appears contrary to the primary responsibilities of a neutral judicial officer, and, once started, invites abuse.
We are not prepared, however, to totally bar independent investigation by a trial court. It is possible to imagine rare and extreme circumstances *Supp. 33 that could authorize a judge to initiate some investigation into matters that neither side is willing to pursue.[6] Such circumstances should be limited to cases where the lack of judicial investigation will clearly result in substantial injustice.[7] Even then, prior to undertaking any such investigation, the court should give prior notice of its contemplated action and an opportunity to the parties to pursue their own corrective action. Furthermore, the court should endeavor to remain as detached as possible from the investigative process through the use of such measures as a court appointed expert or investigator. (Evid. Code, §§ 730-733.) The results of the investigation should not be presented to the jury until counsel have had a reasonable opportunity to review the evidence and comment on the method of its presentation. In its desire to provide the jury with all relevant information, the trial court must take every precaution ito insure that the presentation of the evidence will not be interpreted as partisan advocacy.
There is nothing in the record before us that would in any way indicate that “substantial injustice” would result in the absence of judicial investigation. No critical evidence was being withheld from the jury such that it was being misled. At the point that the court initiated its own investigation, the defendant had done little more than to deny that he was in the accident. Such a state of the evidence is clearly no justification for the actions taken by the trial court.
C. The error of the trial court in the manner of presenting the results of its investigation to the jury was prejudicial.
As previously noted, the cumulative effect of the court’s actions in the manner of presenting the results of its investigation was to telegraph to the jury a message that the defendant’s testimony was to be disbelieved and that the court had evidence to prove the defendant’s guilt. Such an error interferes with the fundamental right of the defendant to a fair trial, such that the conviction must be reversed unless the prosecution can show beyond a reasonable doubt that the error was harmless under the standard articulated in Chapman v. California (1967) 386 U.S. 18 [17 L.Ed.2d 705, 87 S.Ct. 824, 24 A.L.R.3d 1065]: “ ‘The question is whether there is a reasonable possibility that the evidence complained of might have contributed to the *Supp. 34 conviction.’ ”[8] Even though there was considerable evidence pointing to the defendant’s guilt, the action of the trial court could only have had the eifect of focusing the attention of the jury on the evidence presented by the prosecution, without serious consideration of the evidence presented by the defendant. We cannot say under the circumstances as are evident here that the error was harmless beyond a reasonable doubt.[9]
The judgment is reversed.
Sims, J.,* and Wylie, J., concurred.

An account of the court’s actions was given by the judge in chambers following the noon recess:
“During the recess the Court on its own initiative went to the Subaru dealer in Roseville. And I showed the dealer a picture which has been previously marked as People’s No. 6. And I asked the dealer if he had a red replacement lens similar to that shown in the picture.
“The dealer then—or parts manager then brought out the entire tail light assembly, both amber as well as red lens, and told me that this was the replacement lens for the vehicle shown in People’s No. 6. I then asked, the individual who brought me the lens to remove just the red portion of that tail light lens which he did and which I brought back to the Court to show to both the attorneys.
“It appears to the Court that the . . . lens which is depicted in People’s 10, letters and numbers correspond to the letters and numbers which are depicted on the replacement lens which I brought to the Court. I know that counsel is going to have some objection to this as I’m sure that he feels that this is prejudicial to the defendant.
“And there is no doubt in the Court’s mind that it is prejudicial to the defendant.”

The right to call and interrogate witnesses is codified in Evidence Code, section 775: “The Court, on its own motion or on the motion of any party, may call witnesses and interrogate them the same as if they had been produced by a party to the action, and the parties may object to the questions asked and the evidence adduced the same as if such witnesses were called and examined by an adverse party. Such witnesses may be cross-examined by all parties to the action in such order as the court directs.” Other statutory references to the right of the court to actively engage in the presentation of evidence may *Supp. 30 be found in Evidence Code, sections 460 and 730 (appointment of experts), 732 (calling of expert witnesses), and 893 (experts for blood tests): and Code of Civil Procedure, section 117 (investigation in small claims cases).
Many appellate decisions also have extensively discussed the role of the trial judge in the presentation of evidence. (See, e.g., People v. Carlucci (1979) 23 Cal.3d 249, 258 [152 Cal.Rptr. 439, 590 P.2d 15] [questioning witnesses]; People v. Corrigan (1957) 48 Cal.2d 551, 559 [310 P.2d 953] [questioning witnesses]; People v. Ottey (1936) 5 Cal.2d 714, 721 [56 P.2d 193] [questioning of defendant]; People v. Dudley (1978) 81 Cal.App.3d 866, 870 [146 Cal.Rptr. 767] [calling of victim for identity]; People v. Rodriguez (1970) 10 Cal.App.3d 18, 32 [88 Cal.Rptr. 789] [questioning witnesses]; Estate of Dupont (1943) 60 Cal.App.2d 276, 290 [140 P.2d 866] [duty to bring out facts].)
The rejection of the passive role of the trial judge has been emphasized in treatises. (See, e.g., 4 Witkin, Cal. Procedure (2d ed. 1971) Trial, § 185, pp. 3005-3006 [“The role that a trial judge’s unwarranted interference with the handling of the case is misconduct is sometimes distorted into a prohibition against any participation in the trial contrary to the desires or strategy of counsel. This is a complete misconception.”]; Gitelson, A Trial Judge’s Credo (1966) 7 Santa Clara L.Rev. 7, 13-14 [“There are still some counsel and trial judges who dispute the right and duty of a trial judge to participate in the examination of witnesses. Their denial of the right and duty of a trial judge to so do is without substantial support in the law of this state.”].)

Language in other cases in accord with Campbell and Butterfield may be found in McCartney v. Commission on Judicial Qualifications (1974) 12 Cal.3d 512, 533 [116 Cal.Rptr. *Supp. 31 260, 526 P.2d 268] (power must be exercised impartially); People v. Rigney (1961) 55 Cal.2d 236, 241 [10 Cal.Rptr. 625, 359 P.2d 23, 98 A.L.R.2d 186] (judge not to become advocate); People v. Boggess (1924) 194 Cal. 212, 241 [228 P. 448] (court is to avoid adverse inferences from intervention); People v. Robinson (1960) 179 Cal.App.2d 624 [4 Cal.Rptr. 50] (judge assumed role of prosecution); People v. Lancellotti (1957) 147 Cal.App.2d 723, 731 [305 P.2d 926]; People v. Huff (1955) 134 Cal.App.2d 182, 187-188 [285 P.2d 17] (judge must be careful not to throw the weight of his judicial position either for or against defendant); People v. Deacon (1953) 117 Cal.App.2d 206, 209 [255 P.2d 98] (judge must not indicate his own convictions in questioning witness).

We take absolutely no comfort in the following comments made by the judge at sentencing:
“The Court felt that it was necessary to ascertain whether there was a possibility of matching the broken fragments of the lens found at the scene with the type of lens from the defendant’s car. It was for that reason the Court took it upon its own, without notice to either the prosecution or the defense, to make an investigation.
“I can assure you, Mr. Hand, that if it had turned out that the broken lens pieces could not be matched to that of the defendant’s type of vehicle, that that information also would have been presented to the jury.” The fact remains that at the time the judge placed his witness on the stand, he was fully aware that the evidence strongly favored the prosecution’s case. The situation in the present case is wholly different from that in People v. Donovan (1969) 272 Cal.App.2d 413 at pages 421-422 [77 Cal.Rptr. 285], where the trial court had “no idea how the witness will testify.”

We did discover three cases which discussed judicial investigation in the context of depriving litigants of the opportunity to hear evidence and to cross-examine and failing to establish a proper record. (See In re Gupton (1953) 238 N.C. 303 [77 S.E.2d 716]; Walker v. Eldridge (1951) 219 Ark. 594 [243 S.W.2d 638]; and Kilgore v. Tiller (1942) 194 Ga. 527 [22 S.E.2d 150].)

Our holding obviously is not intended to limit the power of a small claims court to conduct an investigation. (See Code Civ. Proc., § 117.) The need to expeditiously resolve such minor disputes is ample justification for allowing unilateral judicial investigation where deemed appropriate.

The “substantial injustice” rule has been used in many jurisdictions other than California as a limitation on the right of a trial judge to call its own witness. (See 67 A.L.R.2d 538.)

There is authority indicating that when a trial court interferes with a defendant’s constitutional right to a jury trial, reversal is mandatory. (See e.g., People v. Cook (1983) 33 Cal.3d 400, 412 [189 Cal.Rptr. 159, 658 P.2d 86]; Chapman v. California, supra, at p. 23 [17 L.Ed.2d at p. 710].) We need not reach the question of whether the error complained of here requires mandatory reversal since we find that at least Chapman error has occurred.

Appellant contends that prejudicial error occurred with the initial investigation by the trial judge. Having determined that the manner in which the court presented its evidence to the jury requires reversal, we need not reach the question of whether prejudicial error occurred with the initial investigation or whether the evidence obtained by the court should otherwise be excluded.

Assigned by the Chairperson of the Judicial Council.