909 P.2d 579

**STATE of Hawai'i, Plaintiff–Appellee,**

v.

**Alexander MEDEIROS, Defendant–Appellant.**

**No. 17307.**

Intermediate Court of Appeals of Hawai'i.

Dec. 20, 1995.

Reconsideration Denied Jan. 9, 1996.

Certiorari Denied Jan. 29, 1996.

Renee N. Costa, Deputy Public Defender, on the briefs, Honolulu, for defendant-appel·lant.

Loren J. Thomas, Deputy Prosecuting Attorney, City and County of Honolulu, on the brief, Honolulu, for plaintiff-appellee.

Before BURNS, C.J., and WATANABE and ACOBA, JJ.

ACOBA, Judge.

On July 2, 1993, Defendant–Appellant Alexander Medeiros (Defendant) was found guilty in a jury-waived trial of Driving Under the Influence of Intoxicating Liquor (DUI) in violation of Hawai'i Revised Statutes (HRS) § 291–4(a) (Supp.1992).[1] The trial court entered its judgment on July 2, 1993. Defendant filed a timely notice of appeal on July 19, 1993. For the reasons stated herein, we affirm.

I.

Defendant was charged with DUI on October 24, 1992 after his vehicle was involved in an automobile accident at the intersection of Vineyard Boulevard and Punchbowl Street in Honolulu on the island of O'ahu. At trial, Plaintiff–Appellee State of Hawai'i (the State) and the defense stipulated that Defendant's intoxilyzer test result established that he was intoxicated, and the issue before the court was limited to whether Defendant was driving the vehicle in question. Defendant claimed that a person by the name of John Matthews (Matthews) was driving Defendant's automobile when the accident occurred. We examine the following relevant evidence adduced at Defendant's jury-waived trial.

In the early morning hours of October 24, 1992, Officer Alfred Prado (Officer Prado) of the Honolulu Police Department was on duty and was dispatched at approximately 2:00 a.m. to the scene of the accident. Upon arriving, the officer observed Defendant "yelling and screaming that a female in the other car was hurt and that an ambulance [was] needed." Officer Prado testified that he approached Steven Nakano (Nakano), the driver of the other vehicle involved in the accident, who informed him that "he [ (Nakano) ] had run a red light" and identified Defendant "as the driver of that vehicle that he struck."

According to Officer Prado, Defendant said that he "was making a left turn with a green arrow" when the other vehicle struck his vehicle. The officer maintained that Defendant told him "he was the driver of the vehicle" and that he was the "only person in that vehicle." While speaking to Defendant, Officer Prado noticed a "moderate to strong odor of alcoholic beverage coming from [Defendant's] breath[,]" and placed Defendant under arrest for DUI. After arresting Defendant, Officer Prado related that Defendant exclaimed, " 'I can't believe it. I had the green arrow, and I still get arrested.' "

Officer Peter Nakagawa (Officer Nakagawa) arrived on the scene shortly after Officer Prado to provide assistance. Officer Nakagawa testified that Defendant was "apparently one of the operators of a motor vehicle" because "Officer Prado informed [him] of that fact." Officer Nakagawa recounted that Defendant "stated [Defendant] was driving"

---

1. At the time of Defendant's arrest, Hawai'i Revised Statutes (HRS) § 291–4(a) (Supp.1992) provided as follows:
§ 291–4 **Driving under the influence of intoxicating liquor.** (a) A person commits the offense of driving under the influence of intoxicating liquor if:
(1) The person operates or assumes actual physical control of the operation of any vehicle while under the influence of intoxicating liquor, meaning that the person concerned is under the influence of intoxicating liquor in an amount sufficient to impair the person's normal mental faculties or ability to care for oneself and guard against casualty; or
(2) The person operates or assumes actual physical control of the operation of any vehicle with .10 per cent or more, by weight of alcohol in the person's blood.

and that the name "John Matthews" was never mentioned while the officer was at the scene.

Nakano testified that he was asked who was "[w]ith the other vehicle" and pointed to Defendant. Contrary to Officer Prado's testimony, Nakano stated the officers never asked him to identify the driver of the other vehicle. He did not see who drove Defendant's automobile.

Arthur Bowley (Bowley) and Rebecca Kamakawiwiole (Kamakawiwiole), acquaintances of Defendant, both reported that earlier that evening, they had driven Defendant to the bar where Defendant's girlfriend Linda Cornelius (Cornelius) worked. The three of them (Defendant, Bowley, and Kamakawiwiole) were at Bowley's home when Cornelius called and informed Defendant that a buyer was interested in purchasing Defendant's car. Bowley and Kamakawiwiole gave Defendant a ride to the bar where Defendant's car was parked. They both observed Defendant enter the bar and then leave with a "hauole [sic] guy"[2] who took the driver's seat of Defendant's vehicle. Defendant sat in the passenger seat. Bowley and Kamakawiwiole related that they followed Defendant's car to Piikoi [Pi'ikoi] Street and then parted with Defendant's car when they turned right to take the freeway onramp "toward Kaimuki [Kaimukī][.]" Bowley testified that they separated from Defendant's automobile at "one-something" in the morning. Bowley and Kamakawiwiole did not see the accident.

Cornelius confirmed that she had asked Defendant to come to the bar because "one of [her] customers had come in and told [her] that his roommate was interested in buying our [(Cornelius and Defendant's)] car." Cornelius testified that the interested buyer, Matthews, "came in about 12:30" and that they talked about selling the car. Because Matthews "wanted to test drive" Defendant's vehicle, Cornelius called Defendant at Bowley's house and asked Defendant to come

down to the bar. She stated that Defendant arrived at "about 1:30" a.m.

Defendant reiterated that Bowley and Kamakawiwiole drove him to the bar to meet a potential buyer for Defendant's automobile. At the bar, Cornelius introduced Matthews to Defendant, and gave Defendant the car keys. According to Defendant, Matthews asked to drive the vehicle and "got in[to] the driver's seat" while Defendant "got in[to] the passenger seat." Defendant stated that Bowley and Kamakawiwiole followed them until Bowley and Kamakawiwiole turned "right to go to H–1 [K]oko [H]ead bound."[3] Defendant asserted that Matthews was still driving the car when the accident occurred. Defendant indicated that after the accident, "John [Matthews] said he was gonna go [sic] and call for help, and took off" in the direction of Queen's Hospital, which was nearby. However, Matthews never returned. Defendant further reported that Officer Prado asked him, " 'Is this your vehicle[?]' " and he replied " 'Yes, I'm the owner of this vehicle.' " Defendant "didn't remember [Officer Prado] saying [Defendant] was the driver of the vehicle" nor did he recall being asked whether he was the driver. When Officer Prado asked Defendant to take a field sobriety test, Defendant related that, "I told 'em [sic]—I told Prado, 'Eh, [sic] I wasn't the driver of the vehicle,' " and that Officer Prado responded " 'Oh, no. We're just gonna [sic] give you a sobriety test just for the hell of it.' "

Defendant disclosed that he had consumed alcohol at Bowley's house that evening. On direct examination, Defendant testified that he told two other officers that Matthews was driving his car, but he did not know the names of the officers. Defendant also recalled telling a sergeant and another officer at the scene that "there was another man driving [his] vehicle." Defendant did not recall speaking to Officer Nakagawa.

---

2. "Haole" means white person. M. Pukui & S. Elbert, *Hawaiian Dictionary* 58 (rev. ed. 1986).

3. "H–1" is the main freeway on the island of O'ahu running east to west.

"Koko Head" is the modern name for a well-known crater east of Honolulu on the island of O'ahu. M. Pukui, S. Elbert, & E. Mookini, *Place Names of Hawaii* 115 (rev. ed. 1974). On O'ahu, "Koko Head" is commonly used as a substitute for "eastbound."

On cross-examination, Defendant remembered that he "told [Sergeant William] Watkins and one [sic] other police officer, that it was John Matthews [who] was the . . . driver."

The court questioned Defendant regarding Defendant's belief that the officers were "testifying falsely because they kn[e]w other officers on the scene who [did not] like [Defendant] much[.]" When the court asked whether Defendant remembered the names of such officers, Defendant stated he "recognized" the officers based on prior dealings with them, but could not recall their names. On further redirect examination by defense counsel, Defendant stated that out of the "ten" police officers at the scene, he had had prior contact with "three" of them, but not with Officers Prado and Nakagawa.

Defense counsel then recalled Officer Nakagawa, who identified "[him]self, Officer Prado, Sergeant Watkins, . . . Sergeant [Mark] Kajiwara" and "[o]ne or two" transport officers as the officers present at the scene. The court also asked Officer Nakagawa whether Defendant ever indicated that "someone else had been driving the car[,]" whether Officer Nakagawa spoke to any of the sergeants who indicated that they knew Defendant, and whether there were any other "sergeants other than Sergeant[s] Kajiwara and Watkins" at the scene. Officer Nakagawa answered in the negative to all questions.

Neither Sergeant Watkins nor Sergeant Kajiwara was called as a witness.

After the prosecution rested, the court recalled Cornelius as its witness to question her about Matthews. Cornelius explained that she attempted to reach Matthews "quite a few times" by calling his roommate, but was unable to do so initially because Matthews had moved to a different residence after the accident. Cornelius testified that Matthews did call her back and told her he "did not want to get involved."

After questioning Cornelius, the court informed both counsel that it wanted Matthews and the two sergeants called as witnesses. The court stated:

> This is a little unusual but this is what I'm gonna [sic] do, folks. I'm going to further this, and I'm going to call some additional witnesses in this matter. I want Sergeant Watkins, and I want Sergeant Kajiwara to testify in this case. And, given the information that we have from Miss Cornelius, I'd like, actually either one or both of you may do it, I think you ought to make an effort to find John [Matthews] through Mike [Matthews' roommate], who works at Tow Masters.

The defense questioned the court's purpose in calling the additional witnesses, pointing out that the State had the burden of proof in the case:

> [Defense counsel]: I'd like the Court to state for the record, Your Honor, why the—the Court is going to be calling two additional witnesses. It's the State's burden to prove beyond a reasonable doubt that [Defendant] was the operator of the vehicle.

The court replied, "Believe me, I'm doing it in your client's interest." The court relied on Hawai'i Rules of Evidence (HRE) Rule 614:

> I wouldn't normally [call witnesses] in a DUI case, but I want to know. And that's what [HRE] Rule 614 gives me the option to do. I want to find out. At this point all I can tell you is the officers sound very credible and I want to explore it as best I can. And I think at this point it is only in the defendant's interest that I do that.

The case was continued to May 3, 1993.

On May 3, 1993, both sides appeared and represented that they could not locate Matthews. The sergeants were both on sick leave and unable to appear. The court indicated, "Although I know it is an inconvenience to [Defendant], I'm inclined to continue it one more time. Believe me, it's in [Defendant's] interest to do that." Defense counsel objected to the continuance, stating, "we've rested and we're prepared to argue. It seems, Your Honor, since the Court has ordered new witnesses, that the Court has some doubt about whether [Defendant] was the driver. We're prepared to argue on that basis." The court refused, expressing its desire to hear from "one or both of the

sergeants[.]" The case was again continued to July 2, 1993.

On July 2, 1993, both Sergeants Watkins and Kajiwara were present to testify. The court overruled the defense's objection to the court calling the officers as witnesses:

> [Defense counsel]: The State and the Defense have rested their cases, ... [and] both the State and Defense have told the Court that they were prepared to argue the case. Uh, the Court does have the right to ask for further witnesses for clarification purposes. We're not challenging that per se. But we do feel that the Court is somewhat ... changing hats to some degree in terms of the State. [The] State has the burden to produce the evidence ..., and the State did not call these witnesses.
>
> ....
>
> THE COURT: Under [HRE Rule] 614 I'm entitled to call witnesses given the diametrically opposed testimony regarding what was said in front of the sergeants on the scene. I want to hear what they have to say, so I'll overrule your objection, and I'll note categorically this is not meant to bolster the State's case at this point.

Sergeant Watkins testified that he did not recall Defendant saying Defendant was not the driver of the car. Sergeant Watkins also related that he had had an encounter with Defendant prior to the accident in question. Sergeant Kajiwara testified that he did not speak to Defendant or hear "any conversation [Defendant] had with any of the officers" at the accident scene. In addition, he did not hear Defendant or anyone else mention that Defendant was not the driver of the car. Both parties were given an opportunity to question the witnesses. Following arguments from both sides, the court found Defendant guilty of DUI in violation of HRS § 291–4(a).

On appeal, Defendant contends that: (1) Defendant's "due process right to a fair trial" was denied when the court (a) "improperly called and examined its own witnesses," and (b) "shifted the burden of proof to the defense," and (2) there was insufficient evidence to convict Defendant of DUI.

## II.

### A.

■ At the outset, we are faced with the issue of whether the trial court may call its own witnesses after both sides have rested. Jurisdictions which have confronted this issue have held that the trial court has the discretion to receive additional evidence after both parties have rested. Like HRE Rule 614 and the federal rule, Arkansas Rules of Evidence Rule 614 authorizes the trial court to call and interrogate witnesses on its own motion. *Hillard v. State*, 321 Ark. 39, 900 S.W.2d 167 (1995). In *Hillard*, the Arkansas Supreme Court held that the trial court did not abuse its discretion in calling and questioning witnesses on its own motion after the State rested. There, the trial court sought to confirm a police officer's prior testimony regarding the witnesses' consent to search. Both the defendant and the state were afforded an opportunity to examine the court-called witnesses. The *Hillard* court held that "the case-in-chief may be reopened for the taking of additional evidence and such a matter is committed to the discretion of the trial court." *Id.* at 168 (citing *Beck v. State*, 317 Ark. 154, 876 S.W.2d 561 (1994)). *See also People v. Betts*, 155 Mich.App. 478, 400 N.W.2d 650 (1986) (holding that the trial judge did not err in calling and questioning res gestae witness after both sides had rested); *People v. Handcock*, 145 Cal.App.3d Supp. 25, 193 Cal.Rptr. 397, 401 (1983) (stating that it is better practice for a court to call its own witnesses "only after both parties have had a reasonable opportunity to develop their case according to their trial strategy") (citing *People v. Gates*, 97 Cal.App.3d Supp. 10, 158 Cal.Rptr. 759 (1979)). We agree with the foregoing authorities and hold that it is within the trial court's discretion to decide to call its own witnesses after the parties have rested.

### B.

■ We now turn to the court's exercise of its power under authority of HRE Rule

614(a).[4] HRE Rule 614(a) states in pertinent part: "The court *may, on its own motion* or at the suggestion of a party, call witnesses, and all parties are entitled to cross-examine witnesses thus called." (Emphasis added.) Because HRE Rule 614(a) provides that the court "may" call its own witnesses, the Rule plainly vests the judge with the choice and, thus, the discretion to do so. The Commentary to HRE Rule 614 (1993) states that HRE Rule 614(a) is identical to the federal rule. The decision to call witnesses under ·Federal Rules of Evidence Rule 614(a) is similarly a "matter largely in the court's discretion[.]" *See* 1 J. Strong, *McCormick on Evidence* § 8, at 27 n. 19 (4th ed.1992). We hold, then, that a trial court's decision to call its own witnesses under HRE Rule 614(a) is reviewed for abuse of discretion. On appellate review, we apply the rule that " '[g]enerally, to constitute an abuse it must appear that the court clearly exceeded the bounds of reason or disregarded rules or principles of law or practice to the substantial detriment of a party litigant.' " *Sapp v. Wong,* 62 Haw. 34, 41, 609 P.2d 137, 142 (1980) (quoting *State v. Sacoco,* 45 Haw. 288, 292, 367 P.2d 11, 13 (1961)). The preliminary question before us, however, is what "rules or principles of law or practice" should govern. *See Sapp.*

■ The judge's power to call witnesses is well established as a part of the judge's general judicial power. "While exercised more frequently in criminal than in civil cases, the authority of the judge to call witnesses is well established." Fed.R.Evid. Rule 614(a) advisory committee's note *reprinted in* M. Graham, *Federal Practice and Procedure: Evidence* at 199 (interim ed.1992). Although unanimously conceded, the scope of the court's power to call witnesses has been susceptible to differing applications.

Authorities have characterized this power to call witnesses as a very broad one which courts should not hesitate to exercise. The judge's "power of calling witnesses in aid of justice is general[.]" 1 J. Strong, *McCormick on Evidence* § 8, at 28 (4th ed. 1992). "[T]he general judicial power itself expressly allotted in every state constitution implies inherently a power to investigate as auxiliary to the power to decide; and the power to investigate implies necessarily a power to summon and to question witnesses[.]" 9 J. Wigmore, *Evidence at Trial at Common Law* § 2484, at 276–77 (Chadbourne rev. ed. 1970). "That the trial judge has no power to cause the evidence produced by the parties to be supplemented never will be conceded as long as the bench retains a true conception of its constitutional function and a due sense of self-respect." *Id.* at 282.

On the other hand, some authorities argue that allowing a court to call its own witnesses constitutes an intrusion into the adversary system. "The calling of non-expert witnesses by the court is generally an unwarranted intrusion into the adversary system and thus should be undertaken only when clearly required in the interests of justice." M. Graham, *Federal Practice and Procedure: Evidence* § 6601, at 200 (interim ed. 1992) (citing *United States v. Ostrer,* 422 F.Supp. 93, 103 n. 11 (S.D.N.Y.1976) (observing that the court's discretion to call person as court's witness is "rarely invoked"); *United States v. Marzano,* 149 F.2d 923, 925 (2d Cir.1945) (stating that it is "seldom very desirable" for a judge "to call and examine a witness whom the parties do not wish to call.")). *See, e.g., Smith v. United States,* 331 F.2d 265 (8th Cir.) (stating that the practice in criminal cases of calling someone as a court's witness is "seldom used and not particularly desirable"), *cert. denied,* 379 U.S. 824, 85 S.Ct. 49, 13 L.Ed.2d 34, *and reh'g denied,* 379 U.S. 940, 85 S.Ct. 321, 13 L.Ed.2d 350 (1964); *Handcock,* 193 Cal.Rptr. at 402 (explaining that "rare and extreme circumstances" authorize a judge to initiate investigation into

---

4. Hawai'i Rules of Evidence (HRE) Rule 614 states:

> **Rule 614 Calling and interrogation of witness by court.** (a) Calling by court. The court may, on its own motion or at the suggestion of a party, call witnesses, and all parties are entitled to cross-examine witnesses thus called.

> (b) Interrogation by court. The court may interrogate witnesses, whether called by itself or by a party.
> (c) Objections. Objections to the calling of witnesses by the court or to interrogation by it may be made at the time or at the next available opportunity when the jury is not present.

matters the parties are unwilling to pursue and that this power "should be limited to cases where the lack of judicial investigation will clearly result in substantial injustice.").

Between these contrasting points of view exist courts which emphasize the judge's role in obtaining all relevant facts for trial, and courts which would limit the use of such power to prevent "a miscarriage of justice."

Those courts advocating the former viewpoint of obtaining all relevant facts stress the truth-finding aspect of trials. *See, e.g., United States v. Liddy,* 509 F.2d 428, 438 (1974) (holding that the federal trial judge has "inherent authority" to call or recall and question witnesses when he or she "believes the additional testimony will be helpful to the jurors in ascertaining the truth and discharging their fact-finding function[ ]"), *cert. denied,* 420 U.S. 911, 95 S.Ct. 833, 42 L.Ed.2d 842 (1975); *United States v. Browne,* 313 F.2d 197, 199 (2d Cir.) ("It is a well-settled rule that a judge presiding over a criminal trial in a federal District Court may, in the exercise of a sound discretion, and in the interest of justice and the ascertainment of truth, call witnesses whom the parties have not seen fit to call[ ]"), *cert. denied,* 374 U.S. 814, 83 S.Ct. 1707, 10 L.Ed.2d 1037, *and reh'g denied,* 375 U.S. 874, 84 S.Ct. 35, 11 L.Ed.2d 105 (1963); *Shere v. State,* 579 So.2d 86, 92 (Fla.1991) (explaining that the trial court may call and examine witnesses on its own motion " 'when the interests of justice demand it, whether the witness be for or against the State, and in such a case to permit counsel on both sides to cross-examine the witness' ") (quoting *Selph v. State,* 22 Fla. 537, 545–46 (1886) (emphasis omitted)). The *Shere* court explained that the rule allowing a court to call its own witness

> is predicated on the principle that justice is best served when the trier of fact is exposed to all relevant evidence, presented in a fair and impartial manner, provided that the evidence is competent, reliable, trustworthy, and not otherwise excludable because of countervailing interests expressed in law, such as constitutional and statutory rights and privileges.

*Id.* California's evidence code also expressly authorizes the court to call witnesses, while preserving the parties' rights to object and cross-examine, "in order to ensure that the truth is exposed." *People v. Cummings,* 4 Cal.4th 1233, 18 Cal.Rptr.2d 796, 850 P.2d 1, 47 (1993), *cert. denied,* —— U.S. ——, 114 S.Ct. 1576, 128 L.Ed.2d 219 (1994). The *Cummings* court granted the trial court authority to call its own witnesses "over the objection and against the will of the parties in furtherance of justice, although the power to do so must be exercised impartially." *Id.* (citations omitted).

Some authorities, as we have indicated, hold that the power to call witnesses should be employed to avoid a miscarriage of justice. *See, e.g., State v. Davis,* 566 S.W.2d 437, 448 (Mo.1978) ("the trial court has discretion in a criminal case to call a witness as its own, [but] the practice should be sparingly used [and] should be restricted to cases where otherwise there may be a miscarriage of justice") (citing *People v. Gordon,* 116 Ill. App.2d 260, 252 N.E.2d 562 (1969) (footnote omitted)); *Patterson v. State,* 22 Md.App. 13, 321 A.2d 544, 547 (1974) ("every decision which has touched upon the subject has counseled that the practice should be sparingly used and restricted to cases where it is shown there might otherwise be a miscarriage of justice") (citations omitted), *aff'd,* 275 Md. 563, 342 A.2d 660 (1975).

■ In all cases, however, the recognized constitutional limitation on a court's power to call its own witnesses is that it be exercised in an impartial manner. The trial court's "inherent power to call witnesses" is always subject to the limitations that such power be "impartially exercised" and not utilized "as a device to aid the prosecution in circumventing the rules of evidence." 81 Am.Jur.2d *Witnesses* § 53, at 79 (1992). "[T]he due process clause requires that a court be impartial. This impartiality is destroyed when the court assumes the role of prosecutor and undertakes to produce evidence, *essential* to overcome the defendant's presumption of innocence, which the government has declined to present." *United States v. Karnes,* 531 F.2d 214, 216–17 (5th Cir.1976) (footnote omitted) (emphasis in original).

We have held that "[a] state criminal defendant is entitled to an impartial judge as

part of the fair trial guarantee in the due process clause of the fourteenth amendment of the United States Constitution[ ]" and such a right "inheres in section 5 of article I of the Hawai'i Constitution." *State v. Silva*, 78 Hawai'i 115, 117, 890 P.2d 702, 704 (App. 1995). Accordingly, "when the court assumes the role of prosecutor, it violates the fundamental due process requirement that the tribunal be impartial, and such an error, by definition, is inherently prejudicial." *Id.* at 121, 890 P.2d at 708. It follows, then, that in calling its own witnesses under HRE Rule 614(a), a court must ensure that it acts impartially so as not to abridge the defendant's right to a fair trial. *See Silva.*

The contention that a trial court's power to call witnesses as an aspect of a power to investigate seems to us to test the outer limits of the judicial power. There can be little dispute, however, that the calling of witnesses may properly serve the purposes of obtaining relevant facts for trial and of preventing a miscarriage of justice. It is also clear that the calling of witnesses sometimes intrudes into the adversary system, but the power cannot be denied on that basis because it is grounded in the inherent authority of the courts and confirmed by rule. We agree with admonitions that the power should be sparingly used, but such admonitions do little to define the appropriate exercise of the power.

We are reluctant at this point to adopt a rule which would unduly restrict the trial court's power to call witnesses. The primacy of the trial judges' role in administering justice is easily conceded since judges preside over the receipt and consideration of evidence. We believe the fundamental tenet that judges must act impartially would suffice as the practical measure of a trial court's discretion in calling witnesses. Because conduct can only be evaluated in the context in which it takes place, whether the exercise of a court's power to call its own witness was partial can only be answered by reference to the specific circumstances of each case.

Based on the foregoing, we must determine, under the specific facts of this case, whether the court failed to act impartially and thus abused its discretion when it called additional witnesses.

## C.

While we have indicated that it is within the trial court's discretion to call its own witnesses after both sides have rested in a criminal case, the trial court should exercise caution in calling witnesses for the ostensible benefit of the defendant after the parties have rested and where the defendant objects to the court's calling of further witnesses. It is to be presumed that defense counsel has investigated the facts of the case and is cognizant of what is in the defendant's best interest. *Cf. Silva*, 78 Hawai'i at 124, 890 P.2d at 711.

In this particular case, we do not believe that the calling of the two sergeants as witnesses necessarily benefited the State's case. The State was not obligated to call these witnesses. Their testimonies were not essential to establish prima facie evidence of the elements of the offense. The sergeants did not provide evidence that had not already been established by the State's witnesses in the main trial. The sergeants were called because Defendant testified he informed the sergeants he was not the driver of his vehicle. Their answers could have supported Defendant's claim. Under the circumstances, we cannot say that the court acted in a partial manner and, thus, abused its authority in calling the witnesses pursuant to HRE Rule 614.

Because the witness referred to as John Matthews was not produced at trial, we do not reach the issue of whether the trial court abused its discretion in requiring that the parties, including Defendant, produce Matthews for trial.

## D.

Defendant next claims that the court abused its authority "when it attempted to impeach" Defendant's and the officers' respective prior testimonies through the court's own witnesses and "sought to elicit facts already brought out by both parties."

HRE Rule 614(b), however, states that a "court may interrogate witnesses ... called by itself[.]" Thus, "[a] trial judge's questioning of a witness is reviewed on appeal for abuse of discretion." *State v. Hutch*, 75 Haw. 307, 861 P.2d 11 (1993). "In a jury-waived trial, the particular danger of jury bias is absent and so 'the judge is accorded considerably greater discretion in the questioning of witnesses in jury-waived trials[.]'" *Silva*, 78 Hawai'i at 118, 890 P.2d at 705 (quoting *Hutch*, 75 Haw. at 326 n. 8, 861 P.2d at 21 n. 8). The trial judge's power or discretion to question a witness, however, is circumscribed by the admonition that the "judge should not assume the role of an advocate for either party[.]'" *Id.* (quoting *State v. Schutter*, 60 Haw. 221, 223, 588 P.2d 428, 429 (1978) (per curiam), *reh'g denied*, 60 Haw. 677, 588 P.2d 428 (1979)). In *Silva*, we stated:

> This caution is all the more important in a jury-waived trial where the court acts both as the judge of the law and as the judge of the facts. When the trial judge fails to act impartially and takes on the role of the prosecutor, the resulting conviction will be reversed. A judge takes on the role of the prosecutor when he or she conducts a "rigorous, persistent and extensive interrogation" of a witness, eliciting testimony which "tends to discredit the theory of the defense ... with questions normally identified with a prosecutor[.]"

*Id.* (quoting *Territory v. Van Culin*, 36 Haw. 153, 160 (1942)) (footnote and citation omitted).

In the present case, the trial judge did not abuse his discretion in his questioning of the witnesses in Defendant's jury-waived trial. Our review of the record reveals that the court's purpose in questioning Sergeants Watkins and Kajiwara was to determine whether they could verify that Defendant told the two sergeants that "John Matthews" was the driver. The court's questioning was not "extensive questioning of the kind that would be pursued by a prosecutor of his or her own witness." *Silva*, 78 Hawai'i at 118, 890 P.2d at 705. Nor was the limited questioning aimed at "'discredit[ing] the theory of the defense[.]'" *Id.* (quoting *Van

*Culin*, 36 Haw. at 160). Hence, the court did not appear to be acting as an "advocate" in its questioning.

### III.

Defendant next contends that the court improperly shifted the burden of proof to the defense, thus violating Defendant's due process right to a fair trial. He claims that "by directing the defense to summon additional witnesses after both parties had rested[,]" the court "*appeared* to be saying that while it might be leaning toward the State, it wanted to hear from additional witnesses so that [Defendant] would have a chance to prove himself innocent." (Emphasis added.) Defendant alleges that this error was not harmless since the additional testimony of Sergeants Watkins and Kajiwara "contributed to [Defendant's] conviction by enabling the court to reach a verdict."

Because we concluded that the trial court did not abuse its discretion in calling additional witnesses in Part II, *supra*, we find Defendant's argument without merit. The defense did not produce any of the witnesses the court requested. As we have held, under HRE Rule 614(a), it was within the court's discretion to call the witnesses. It is not evident from the record that the sergeants' testimonies weighed critically in the court's decision, although one logical outcome of the testimony of additional witnesses may certainly be to enable the factfinder, here the trial court, to reach a decision. Defendant's protection against unfair prejudice lies, as we previously stated, in the due process safeguard against a court's partial conduct.

### IV.

Finally, Defendant alleges that there was insufficient evidence to convict him of the DUI offense under HRS § 291-4(a).

The courts "'have long held that evidence adduced in the trial court must be considered in the strongest light for the prosecution when the appellate court passes on the legal sufficiency of such evidence to support a conviction; the same standard applies whether the case was before a judge or a

jury.'" *State v. Pone,* 78 Hawai'i 262, 265, 892 P.2d 455, 458 (1995) (quoting *State v. Batson,* 73 Haw. 236, 248, 831 P.2d 924, 931, *reconsideration denied,* 73 Haw. 625, 834 P.2d 1315 (1992)). Substantial evidence is "evidence which a reasonable mind might accept as adequate to support the conclusion of the fact finder." *State v. Gabrillo,* 10 Haw.App. 448, 459, 877 P.2d 891, 896 (1994) (quoting *State v. Lima,* 64 Haw. 470, 475, 643 P.2d 536, 539 (1982)) (internal quotation marks and brackets omitted). Matters related to the credibility of witnesses and the weight to be given to the evidence are generally left to the factfinder. *Id.* at 457, 877 P.2d at 895. The appellate court will neither reconcile conflicting evidence nor interfere with the decision of the trier of fact based on the witnesses' credibility or the weight of the evidence. *Id. See also State v. Hopkins,* 60 Haw. 540, 542, 592 P.2d 810, 812 (1979) (stating that it was up to the trial judge as factfinder to assess the credibility of witnesses, including the defendant and resolve all questions of fact). Thus, we need not necessarily concur with a trial court's particular finding in order to sustain a conviction.

■ By stipulation, the sole issue at trial was whether Defendant was the driver of his car. Officers Prado and Nakagawa testified that Defendant indicated he was driving the vehicle. None of the officers recalled Defendant saying that he was not the driver or that Matthews was the driver, as Defendant claimed. While there were witnesses who supported Defendant's version of the facts, the weight and effect to be given the witnesses' testimony was for the factfinder, and the trial judge chose to believe Officer Prado, Officer Nakagawa, and the two sergeants and to disbelieve the other witnesses. Generally, on appeal, we will not attempt to reconcile conflicting evidence or interfere with a judge's determination on the witnesses' credibility or the weight of the evidence. *Gabrillo,* 10 Haw.App. at 457, 877 P.2d at 895. Therefore, viewed in the light most favorable to the State, there was substantial evidence that Defendant was driving his vehicle at the time of the offense.

V.

For the foregoing reasons, we affirm the judgment of July 2, 1993.