# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 16-10274

United States Court of Appeals
Fifth Circuit

**FILED**
May 19, 2017

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA,

      Plaintiff - Appellee

v.

JESUS ENRIQUE-ASCENCIO,

      Defendant - Appellant

Appeal from the United States District Court
for the Northern District of Texas

Before BARKSDALE, GRAVES, and HIGGINSON, Circuit Judges.

JAMES E. GRAVES, JR., Circuit Judge:

Jesus Enrique-Ascencio pleaded guilty to one count of illegally reentering the country after a prior removal. He appeals the 16-level sentence enhancement he received under Section 2L1.2 of the federal Sentencing Guidelines for a prior drug trafficking conviction, contending that this conviction was not "a drug trafficking offense for which the sentence imposed exceeded 13 months." In the alternative, Enrique-Ascencio asks for remand so that the district court may resentence him under a post-sentencing Guidelines amendment that would have reduced his total offense level. For the reasons that follow, we AFFIRM.

No. 16-10274

## I.     BACKGROUND

On November 24, 2015, Enrique-Ascencio pleaded guilty to one count of illegally reentering the country after a prior removal in violation of 8 U.S.C. § 1326(a) and (b)(2). The probation officer who prepared his presentence report ("PSR") recommended that his base offense level be increased by 16 levels under Section 2L1.2(b)(1)(A), based on a prior felony drug trafficking offense "for which the sentence imposed exceeded 13 months." The recommended enhancement was based on a 2006 California felony conviction for possession for sale of cocaine. According to the PSR, Enrique-Ascencio was sentenced for this offense to 120 days in "the work release program in jail," followed by 36 months of probation. In April 2008, a probation revocation hearing was held after Enrique-Ascencio violated the terms of his probation and he was sentenced to an additional 365 days in the county jail.

The PSR calculated a cumulative sentence of 485 days of imprisonment, triggering the Section 2L1.2 16-level enhancement. As proof of the 2006 conviction and sentence, the PSR appended a plea document for the offense. It indicated that Enrique-Ascencio desired to enter a guilty plea to the offense with the understanding that the district attorney had agreed to a sentence of "120 CJ W/E's. Plea contingent on no prior felony convictions."

Enrique-Ascencio objected to the enhancement, arguing that he had not sustained a drug trafficking offense for which the sentence imposed was greater than 13 months. He claimed that serving his sentence of 120 days through a work release program did not constitute a "sentence of imprisonment" under Section 2L1.2(b)(1)(A)(i) and 2L1.2 cmt. n.1(B)(vii), because he worked each day outside of a jail facility. Enrique-Ascencio did not dispute that his 365-day sentence of imprisonment for his subsequent parole violation counts toward his "sentence imposed" for purposes of the enhancement. But by his calculation, his sentence was 365 days in total,

2

No. 16-10274

warranting only a 12-level enhancement. Enrique-Ascencio also noted that the Government had not provided a certified copy of the judgment supporting the enhancement and reserved his right to object on this additional basis if the Government did not produce a certified copy by the date of sentencing.[1]

The district court overruled Enrique-Ascencio's objections and adopted the findings in the PSR without change. The court sentenced Enrique-Ascencio at the bottom of the Guideline range of 57 to 71 months and credited him for a month of administrative custody, resulting in a term of imprisonment of 56 months. It imposed no term of supervised release. This appeal followed.

## II.   DISCUSSION

Enrique-Ascencio raises two issues on appeal. First, he argues that the district court's application of the 16-level enhancement was error because it was not established that the sentence imposed for the offense, at least some of which he served through work release, exceeded 13 months. Second, Enrique-Ascencio urges remand so that the district court may resentence him under a Guidelines amendment that became effective after his sentencing. We address each issue in turn.

A. Work Release as a Sentence of Imprisonment

Enrique-Ascencio appeals the district court's rejection of his objection to the PSR that his time spent in a work release program should not be counted toward his "sentence imposed" for purposes of determining the applicability of Section 2L1.2's 16-level enhancement. Because Enrique-Ascencio preserved this objection, "we review the district court's interpretation and application of the sentencing guidelines *de novo* and its findings of fact for clear error."

---

[1] The Government has been unable to obtain a certified copy of the judgment to date. Enrique-Ascencio argues that the documents supporting the enhancement are inadequate to establish that his sentence of imprisonment exceeded 13 months. As discussed *infra* Part II.A.2, even assuming that reliance on the documents is error, such error is harmless and does not warrant reversal.

No. 16-10274

*United States v. Martinez-Lugo*, 782 F.3d 198, 201 (5th Cir. 2015) (alteration omitted). "We review a district court's conclusion that a prior state conviction constitutes a drug trafficking offense [for which the sentence imposed exceeded 13 months] *de novo*." *Id.*

    1. *Section 2L1.2(b)(1)(A)(i)*

We have not yet addressed whether a sentence involving work release qualifies as a "sentence of imprisonment" under the Guidelines. Here, we need only determine whether the particular California work release program identified by Enrique-Ascencio so qualifies. Federal sentencing guidelines are analyzed according to the rules of statutory interpretation. *United States v. Mendez-Villa*, 346 F.3d 568, 570 (5th Cir. 2003) (per curiam). "The text of the guideline is the starting point in the analysis; the commentary is considered authoritative. We use 'a plain-meaning approach' in our interpretation of the Sentencing Guidelines." *Id.* (internal citations omitted).

We begin with the text. At the time Enrique-Ascencio was sentenced, Section 2L1.2(b)(1)(A)(i) provided that the offense level for unlawfully entering the United States shall be increased by 16 if the defendant previously was deported after "a conviction for a felony that . . . is a drug trafficking offense for which the sentence imposed exceeded 13 months."[2] The commentary to Section 2L1.2 indicates that "sentence imposed" has the same meaning as the term "sentence of imprisonment" found in Section 4A1.2. U.S.S.G. § 2L1.2 cmt. n.1(B)(vii) (referring to § 4A1.2(b) and cmt. n.2). That Guideline, in turn, defines "sentence of imprisonment" as a "sentence of incarceration and refers to the maximum sentence imposed." § 4A.1.2(b)(1). The commentary further

---

[2] Effective November 1, 2016, the Sentencing Commission amended Section 2L1.2 so that it no longer includes such a 16-level enhancement. *See* U.S.S.G. App. C, Amend. 802 (http://www.ussc.gov/sites/default/files/pdf/guidelines-manual/2016/APPENDIX_C_Supplement.pdf#page=148).

clarifies that "[t]o qualify as a sentence of imprisonment, the defendant must have actually served a period of imprisonment on such sentence (or, if the defendant escaped, would have served time)." § 4A1.2 cmt. n.2.  But "criminal history points are based on the sentence pronounced, not the length of time actually served." *Id.*

Enrique-Ascencio posits that serving a jail sentence through work release does not constitute a "sentence of imprisonment" because work release is not actual incarceration.  And because "the defendant must have actually served a period of imprisonment" in order for his sentence to qualify as a "sentence of imprisonment," § 4A1.2 cmt. n.2, the Government must prove that Enrique-Ascencio actually served at least one day of his 120-day sentence in a penal institution.

The parties agree that the work release program referenced in Enrique-Ascencio's plea agreement refers to California's county jail work release program, authorized under California Penal Code Section 4024.2(a).  That statute permits the sheriff "to offer a voluntary program under which any person committed to the [county jail] facility may participate in a work release program . . . in which one day of participation will be in lieu of one day of confinement."  *Id.*  Individual participation in the program is within the discretion of the sheriff.  *Id.* § 4024.2(d).  Furthermore, if the person fails to comply with the conditions of the program, "the sheriff may immediately retake the person into custody to serve the balance of his or her sentence."  *Id.* § 4024.2(c).

Although we have not previously decided the issue of whether a work release program like this one qualifies as a 'sentence of imprisonment', we do not write on a clean slate. In *United States v. Schomburg*, 929 F.2d 505 (9th Cir. 1991), the Ninth Circuit determined that a jail sentence served through a similar California diversionary work release program is nonetheless a

"sentence of imprisonment" under the Guidelines. In *Schomburg*, the defendant was sentenced to 60 days in county jail, which the sentencing court recommended he serve through a weekend work project. *Id.* at 506–07. The *Schomburg* court rejected the defendant's argument that "because he was *never* in custody on the 60-day sentence, it should not be counted as a sentence of imprisonment." *Id.* at 507. The court reasoned that the defendant's eligibility for the weekend work project was ultimately at the discretion of the sheriff so the sentencing court's recommendation of the work project was not binding. *Id.* "Thus, the sentence, as pronounced by the court at the outset, was a sentence of imprisonment subject to alteration at the Sheriff's discretion." *Id.*

Enrique-Ascencio's participation in the work release program is similarly at the discretion of the county sheriff. *See* Cal. Penal Code §§ 4024.2(c) and (d). Indeed, treatment of section 4024.2 by California courts supports this understanding. The California Supreme Court has observed that "[s]ubdivision (a) of section 4024.2 states that the program may only be offered to someone already committed to the correctional facility[,]" and the statute further "provides that a person is eligible for the program at the discretion of the administrative official in charge of the program[.]" *Ryan v. Comm'n on Judicial Performance*, 754 P.2d 724, 735–36, *as modified on denial of reh'g* (Cal. 1988). Thus, a judge does "not have authority under Penal Code section 4024.2 to order [a defendant] into the work-release program." *Id.* at 736. Importantly, the court explained, "[a] judge has the power *to commit a person to a correctional facility*, but then the administrative official in charge of the facility has the discretionary power to offer work release if the person is deemed eligible under the rules of the program." *Id.* (emphasis added). Courts since appear to have embraced this interpretation of the work release statute. *See, e.g., United States v. Benz*, 472 F.3d 657, 659 (9th Cir. 2006) ("California

No. 16-10274

state judges do not have the discretion to impose work release under § 4024.2(a)."); *People v. Dubose*, No. B275409, 2017 WL 1365026, at *2 (Cal. Ct. App. Apr. 12, 2017) (unpublished) ("By section 4024.2's explicit terms, oversight and administration of a work release program to satisfy an imposed term of confinement under that section falls under the authority of the county board of supervisors and the county sheriff or appropriate designee—not the trial court.").

These decisions bolster the Ninth Circuit's analysis in *Schomburg*, which we have cited with approval in the past. In *United States v. Valdez-Valdez*, 143 F.3d 196, 202 n.41 (5th Cir. 1998), we noted that although the defendant had not argued that his work release was not a sentence of imprisonment, such an argument would likely fail, citing *Schomburg*.

Then, in *United States v. Brooks*, 166 F.3d 723, 727 (5th Cir. 1999), we cited *Schomburg* as persuasive authority in determining that the defendant's boot camp sentence was a sentence of imprisonment for purposes of calculating his criminal history score under Section 4A1.1(b). Enrique-Ascencio argues that *Brooks* supports his position because we deemed "physical confinement [to be] a key distinction between sentences of imprisonment and other types of sentences," leading to our conclusion that boot camp was a sentence of imprisonment because the defendant was not free to leave. *Id.* at 726–27 (quoting *United States v. Vanderlaan*, 921 F.2d 257, 259 (10th Cir. 1990)). By contrast, Enrique-Ascencio argues that the work release program in which he participated does not require any physical confinement; the participant may simply "show up to work and then go home." In this sense, he contends that work release is similar to home detention, which we have held is not a sentence of imprisonment because it does not involve confinement in a penal institution. *See United States v. Gordon*, 346 F.3d 135, 138–39 (5th Cir. 2003).

7

No. 16-10274

*Brooks* and *Gordon* do not avail Enrique-Ascencio. Both decisions accepted *Schomburg*'s logic that, despite the lack of custodial confinement, the sheriff's discretion to alter the sentence to include imprisonment renders work release a sentence of imprisonment. Indeed, *Gordon* distinguished work release from home detention, as "there [was] no indication in the record that [the defendant's] sentence of house arrest involved any discretion by law enforcement." 346 F.3d at 138.

We are persuaded by *Schomburg*'s reasoning and adopt it here. The text of the Guidelines further supports this interpretation. Importantly, a sentence of imprisonment is based on the "sentence pronounced" by the court, and not "the length of time actually served." § 4A1.2 cmt. n.2. The court sentenced Enrique-Ascencio to 120 days in the county jail with eligibility to serve his sentence through a work release program. His ultimate participation in the program in lieu of incarceration was at the discretion of law enforcement. Just as the length of time actually served has no impact on whether a defendant's sentence is a sentence of imprisonment, so too is the manner in which the sheriff ultimately determines the defendant will serve the jail sentence pronounced by the court.

Enrique-Ascencio's remaining arguments are similarly unpersuasive. In response to his contention that the Government must prove he "actually served a period of imprisonment," *i.e.*, a period of incarceration, on his sentence, § 4A1.2 cmt. n.2, the Government asserts that "period of imprisonment" has a more limited meaning, as evidenced by the commentary's reference to Sections 4A1.2(a)(3) and (b)(2). Those provisions address the suspension of sentences, which the Guidelines treat differently. For example, any part of a sentence of imprisonment that was suspended does not count toward the "sentence of imprisonment." § 4A1.2(b)(2). Therefore, the requirement of actually serving a period of imprisonment is meant only to carve out sentences that were

8

initially pronounced as sentences of imprisonment, but were subsequently judicially suspended. That an escapee is counted as having actually served a period of imprisonment, *see* § 4A1.2 cmt. n.2, underscores the point that judicial suspension of a sentence (which leaves no discretion to law enforcement), and not actual confinement, is the focus of that clause. We think this a more reasonable construction of the term because it avoids conflict with the Guidelines' emphasis on "the sentence pronounced," rather than "the length of time actually served." *See id.*

Enrique-Ascencio also invokes the canon of statutory construction against surplusage, pointing out that another Guideline, Section 4A1.1, lists both work release and imprisonment as examples of criminal justice sentences, suggesting that the two must be distinct. *See* § 4A1.1(d) (stating that a defendant receives two extra criminal history points "if the defendant committed the instant offense while under any criminal justice sentence, including probation, parole, supervised release, imprisonment, work release, or escape status"). If "imprisonment" were understood to include "work release," Enrique-Ascencio argues, the latter would be surplusage. *See Ratzlaf v. United States*, 510 U.S. 135, 140–41 (1994). But the surplusage canon "cannot always be dispositive because (as with most canons) the underlying proposition is not *invariably* true. Sometimes drafters *do* repeat themselves . . ." Scalia & Garner, Reading Law: The Interpretation of Legal Texts, 176–77 (1st ed. 2012). That canon is inapt in the context of Section 4A1.1, in which the Commission was trying to account for myriad "jurisdictional variations in offense definitions, sentencing structures, and manner of sentence pronouncement." § 4A1.1 cmt. background. As the Government explains, it is more likely that the Commission was especially inclusive in expounding the meaning of a "criminal justice sentence," and some redundancy crept in.

No. 16-10274

Furthermore, the Government points to another Guideline that mentions work release, Section 5G1.3, which expressly *includes* work release within the definition of a "term of imprisonment." Section 5G1.3 discusses how sentences are imposed on defendants subject to an undischarged term of imprisonment and provides that: "[i]f the instant offense was committed while the defendant was serving a term of imprisonment (including work release, furlough, or escape status)" the sentence should be imposed consecutively to the undischarged term of imprisonment. § 5G1.3(a). By the Government's reckoning, Sections 4A1.1 and 5G1.3 contain the only two instances of the term "work release" in the Guidelines. And one of those instances plainly includes work release in the definition of "a term of imprisonment." This strongly suggests that the Commission recognized that work release may be a means of serving a sentence of imprisonment, rather than a separate status. By contrast, the Guidelines treat a sentence of home detention as something other than a sentence of imprisonment. *See Gordon*, 346 F.3d at 138–39 (observing that Sections 5C1.1(c) and 7B1.3(d) distinguish between home detention and imprisonment).

Accordingly, we hold that Enrique-Ascencio's 120-day sentence is a sentence of imprisonment, regardless of whether he served it in whole or in part through California's Section 4024.2 work release program. Therefore, based on his cumulative 485-day sentence, Enrique-Ascencio was previously convicted of "a felony . . . drug trafficking offense for which the sentence imposed exceeded 13 months," warranting Section 2L1.2's 16-level enhancement.

2. *District Court's Reliance on Non-binding Plea Document*

Enrique-Ascencio also challenges the enhancement on the grounds that the Government failed to satisfy its burden of proof with competent evidence of his prior conviction and sentence. Because the PSR appended only a non-

binding plea document as proof of the predicate offense, Enrique-Ascencio reserved his right to object if the Government did not provide a certified copy of the judgment by the date of sentencing.  At sentencing, the Government had not yet obtained the document.  Enrique-Ascencio notified the district court of his intent to file an appeal and indicated that, although he did not contest the fact of the conviction, a certified copy of the judgment would be necessary for the appellate record.  He agreed to a continuance to the imposition of final judgment to allow the Government time to provide a certified copy, which the Government agreed to do.  Final judgment, however, was entered without such documents.  Some months later, the Government provided the district court with three additional documents:  (1) the same plea document that was originally appended to the PSR; (2) the criminal complaint for the 2006 offense; and (3) a case print of the court minutes relating to the offense.  In its brief to this Court, the Government stated that it was in the process of obtaining a copy of the judgment from San Bernardino County to supplement the record.  The Government has since represented that for reasons unknown and despite multiple requests, the clerk's office in San Bernardino County has not yet produced the judgment.  Nevertheless, the Government maintains that the documents in the record are sufficient to support the district court's imposition of the enhancement.

"A district court cannot impose a sentence enhancement such as [§ 2L1.2(b)(1)(A)(i)] unless the government has proven any facts necessary to support the enhancement by a preponderance of the evidence."  *United States v. Rodriguez*, 630 F.3d 377, 380 (5th Cir. 2011).  We review the district court's factual findings for clear error.  *Id.*  A factual finding is not clearly erroneous if it is "plausible in light of the record as a whole."  *Id.*  "This court will find clear error only if a review of the record results in a 'definite and firm conviction that a mistake has been committed.'"  *United States v. Lopez-Cano*, 516 F.

App'x 350, 352 (5th Cir. 2013) (unpublished) (quoting *Rodriguez*, 630 F.3d at 380).

Enrique-Ascencio contends that the "categorical approach" of *Taylor v. United States*, 495 U.S. 575 (1990), applies to a sentencing court's determinations that a prior offense qualifies as a predicate for a sentence enhancement. We agree. *See, e.g.*, *United States v. Gomez-Alvarez*, 781 F.3d 787, 792 (5th Cir. 2015); *United States v. Garza-Lopez*, 410 F.3d 268, 273 (5th Cir. 2005). "Under the categorical approach set forth in *Taylor v. United States*, a sentencing court looks to the elements of a prior offense, rather than the facts underlying the conviction, when classifying a prior offense for sentence enhancement purposes." *Gomez-Alvarez*, 781 F.3d at 792. When the statutory definition of the prior offense does not categorically establish that it is a qualifying offense for the enhancement, the Supreme Court has, under certain circumstances, endorsed a "modified" categorical approach, under which a sentencing court "is permitted to look beyond the fact of conviction and the statutory definition of the prior offense." *Id.* (citing *Shepard v. United States*, 544 U.S. 13, 17 (2005)). Under this approach, a court may look to a limited class of documents, such as a "charging document, written plea agreement, transcript of plea colloquy, and any explicit factual finding by the trial judge to which the defendant assented." *Shepard*, 544 U.S. at 16.

Proper documents are limited to "conclusive records made or used in adjudicating guilt." *Id.* at 21. This Court has previously determined that certain documents are not *Shepard*-approved. The PSR, standing alone, cannot establish whether a prior offense qualifies for a sentence enhancement. *United States v. Gutierrez-Ramirez*, 405 F.3d 352, 357 (5th Cir. 2005). Criminal complaints are also inadequate because they do not represent the final charging document to which a defendant pleaded guilty. *Lopez-Cano*, 516 F. App'x at 353–54 (explaining that under California criminal procedure, a

felony prosecution commences with a criminal complaint, but is subsequently replaced by an information or stipulated to be deemed an information).  For the same reason, the plea document appended to the PSR, a declaration by defendant of intention to plead nolo contendere, is not an acceptable record because it is not a final written plea agreement between the parties and approved by the court.  Docket sheets and case summaries also "are not *Shepard*-approved documents because they were prepared by court [clerical staff] not judges."  *Id.* at 354.  As we explained in *Gutierrez-Ramirez*, such documents do not have sufficient indicia of reliability "to satisfy the 'rigorous standard' required by *Taylor*'s modified categorical approach."  405 F.3d at 358 (citation omitted).

Enrique-Ascencio asserts that none of the documents in the record satisfy this standard.  Moreover, he claims that consideration of the documents provided after entry of final judgment would violate his right to be present at sentencing and right to be heard under due process and Federal Rule of Criminal Procedure 32.  The Government, however, maintains that even if these documents would not satisfy the *Taylor/Shepard* standard, we have, in some cases, condoned the use of non-*Shepard* documents to establish the *fact* of an underlying conviction, as opposed to *facts about* the underlying conviction.  *See, e.g., Lopez-Cano*, 516 F. App'x at 354; *United States v. Neri-Hernandes*, 504 F.3d 587, 590–92 (5th Cir. 2007).  The Government contends that if such documents are permissible to establish the fact of an underlying conviction, they are by implication sufficient to establish the fact of an underlying sentence.  The problem is that the Government must prove not only the fact of Enrique-Ascencio's sentence, but also facts about the sentence, namely, whether it provided the remaining one month of imprisonment necessary to support the Section 2L1.2 enhancement.

No. 16-10274

We agree with Enrique-Ascencio that, issues of notice aside, none of the documents in the record satisfy the reliability standard established by *Taylor* and *Shepard*. In the face of a properly mounted challenge, such documents, standing alone, cannot serve as a basis for a sentence enhancement. Here, however, Enrique-Ascencio has never contested the existence of the underlying offense or his 120-day jail sentence. Therefore, these facts, in view of the record as a whole, are plausibly "explicit factual finding[s] by the trial judge to which the defendant assented," which may be appropriately considered even under *Shepard*. *See* 544 U.S. at 16.

Even assuming the district court's reliance on the plea document was error, the error was harmless. Enrique-Ascencio's argument is fundamentally legal in nature. He contends that the possibility that he served his sentence entirely through work release makes it not a "sentence of imprisonment" for purposes of the enhancement. In so far as there is any factual dispute, it is whether the Government has proven with competent evidence that he served at least one day of his 120-day sentence in custody. Because Enrique-Ascencio's 120-day sentence is a sentence of imprisonment, even if served entirely through work release, this factual dispute is immaterial. We have only remanded when resolution of the factual dispute may have had an effect on the sentence imposed. *See, e.g.*, *Gutierrez-Ramirez*, 405 F.3d at 359; *United States v. Espinoza-Acuna*, 328 F. App'x 918, 919 (5th Cir. 2009) (unpublished). This is not such a case. Therefore, remand on this issue is not warranted.

B. Post-Sentencing Guidelines Amendment

Lastly, Enrique-Ascencio argues that we should remand to the district court in order to determine whether a lesser sentence is appropriate under an amendment to the Guidelines that took effect after the date of his sentence. Enrique-Ascencio was sentenced in March 2016 and, as stated *supra* in note 2, the amendment in question took effective on November 1 of that year.

14

Pursuant to that amendment, Enrique-Ascencio would qualify for at least a six-level reduction to his offense level, which would give rise to a potential 26-month reduction in his sentence if he were sentenced at the bottom of the new range.

As Enrique-Ascencio concedes, because he did not object to his sentence on these grounds, we review only for plain error. *United States v. Garcia-Carrillo*, 749 F.3d 376, 378 (5th Cir. 2014). And Enrique-Ascencio acknowledges that we addressed this very issue in *Garcia-Carrillo* and held that it is not plain error for a district court to fail to consider a non-retroactive post-sentencing amendment to the Guidelines, even if it might have affected the sentence imposed by the district court. *Id.* at 380. He argues, however, that *Garcia-Carrillo* must be reconsidered in light of *Molina-Martinez v. United States*, 136 S. Ct. 1338 (2016).

But *Molina-Martinez* has no bearing on the issue presented here. That case involved a situation where the district court had incorrectly calculated the guideline range under the *existing* Guidelines. *Id.* at 1341. Although *Molina-Martinez* clarifies the application of plain error review to such errors, it says nothing about applying that standard to non-erroneous sentencing decisions that might have been affected, had a subsequent Guidelines amendment controlled. Accordingly, *Garcia-Carrillo* is dispositive and forecloses Enrique-Ascencio's argument.

## III.   CONCLUSION

For the foregoing reasons, we AFFIRM the judgment of the district court.

15